STANDARD SEWING EQUIPMENT CORPORATION, Respondent, vs. MOTOR SPECIALTY, INC., Appellant.

*March 4—March 31, 1953.*

For the appellant there were briefs by *Heft, Burgess & Brown,* attorneys, and *Glenn R. Coates* of counsel, all of Racine, and oral argument by *Mr. Carroll R. Heft* and *Mr. Coates.*

For the respondent there was a brief by *Benson, Butchart, Haley & Benson* of Racine, and oral argument by *Donald A. Butchart.*

CURRIE, J. The sole ground upon which defendant moved for summary judgment was the alleged invalidity of the contract sued upon because of plaintiff's failure to be licensed as a foreign corporation to transact business in this state. The contract having been made in 1950, the applicable statute is sec. 226.02, Stats. 1949, and not sec. 180.847, Stats. 1951, by which the former statute has now been replaced. As explained in the revision-committee note to be found immediately following sec. 180.847 in the 1951 Wisconsin statutes, the latter statute abrogates the harsh rule of sec. 226.02 (9).

Subs. (1) and (9) of sec. 226.02, Stats. 1949, provide in part as follows:

"(1) No foreign corporation shall transact business or acquire, hold, or dispose of property in this state until it shall

have filed in the office of the secretary of state a copy of its charter, articles of association or incorporation, and all amendments thereto certified by the proper officer of the state wherein the corporation was organized, and shall have been licensed in this state. . . ."

"(9) . . . Every contract made by or on behalf of any such foreign corporations, affecting its liability or relating to property within this state, before it shall have complied with the provisions of this section, shall be void on its behalf and on behalf of its assigns, but shall be enforceable against it or them."

If the transactions in Wisconsin on the part of the plaintiff foreign corporation constituted interstate commerce, the foregoing quoted provisions of sec. 226.02, Stats. 1949, do not apply to them. *Charles A. Stickney Co. v. Lynch* (1916), 163 Wis. 353, 158 N. W. 85; and *Jerome P. Parker-Harris Co. v. Kissel M. C. Co.* (1917), 165 Wis. 518, 163 N. W. 141.

With this principle of law in mind we will now examine the facts upon which counsel for defendant base their contention that plaintiff transacted business in this state without a license. On July 26, 1950, a written contract or purchase order was entered into at Racine, Wisconsin, between the parties which was executed in behalf of the plaintiff by its president who was then personally present within the state. The material terms of such contract provided as follows:

"This agreement constitutes an order from Standard Sewing Equipment Corporation for 100,000 Spec. #192 motors at $2.91 and constitutes an acceptance by Motor Specialty, Inc., of Standard's order for 100,000 motors at $2.91 with the terms and conditions outlined in this contract.

" . . . All merchandise to be f.o.b. Racine, Wisconsin."

Plaintiff's principal place of business is in the city of New York but it also maintains places of business in the cities of Chicago and Los Angeles, but has no place of business in Wisconsin and has no officer, agent, or employee who is a

resident of, or who is located in, Wisconsin. Between August 28, 1950, and May 2, 1951, the defendant, pursuant to the contract, manufactured and shipped approximately 31,000 of said motors f.o.b. Racine consigned to the plaintiff at its place of business in Chicago, these being all of the motors which the defendant supplied under the contract. The only correspondence passing between the parties with reference to the contract which is before us in the record is a letter · from plaintiff to defendant dated September 8, 1950, reading as follows:

"Will you please send your invoices to New York in the future, as all these invoices are paid from this office.
*Please continue to ship the motors to Chicago* and they will redirect them to either Los Angeles or New York from that point."

The first point to be considered is the construction of the words "f.o.b. Racine" appearing in the contract. When used with respect to a sale of merchandise "f.o.b." means "free on board" the vessel, cars, or other conveyance which is to transport it to the buyer. See cases cited in 17 Words and Phrases (perm. ed.), p. 195. The use of "f.o.b." in a contract of sale of goods evidences a shipment of goods. *Tustin Fruit Asso. v. Earl Fruit Co.* (1898), 6 Cal. Unrep. 37, 46, 53 Pac. 693. Therefore, the use of such term in the contract in the instant case required shipment of the goods by the defendant seller and the movement of the same in commerce. However, the contract itself is silent as to the point of destination.

Counsel for defendant contend that because the contract itself did not specify the point of destination outside of Wisconsin to which the motors were to be shipped, the contract was open to the construction that some of the motors might have been shipped to some other points in Wisconsin, in which case there would be a transaction involving intrastate, and not interstate, commerce. However, in determining

whether it was contemplated by the parties that any of the motors were to be shipped to points of destination in Wisconsin, or whether all were to be shipped outside of the state, the trial court was entitled to consider the facts constituting the surrounding circumstances, and the practical interpretation of the contract by the parties themselves, inasmuch as the phrase "f.o.b. Racine" is ambiguous with respect to point of destination. 12 Am. Jur., Contracts, pp. 784, 787, secs. 247, 249.

In the case of *Dahnke-Walker Co. v. Bondurant* (1921), 257 U. S. 282, 42 Sup. Ct. 106, 66 L. Ed. 239, the United States supreme court had before it an action by a Tennessee corporation to recover damages for the breach of a contract for the sale and delivery of a crop of wheat estimated at 14,000 bushels. The defendant was a resident of Kentucky and the contract was made in Kentucky, and, as in the instant case, the contract specified that delivery was to be on board cars of a common carrier. The plaintiff operated a mill in Tennessee. Although no point of destination was specified in the contract, plaintiff had in the past purchased grain from the defendant (at one time 13,000 bushels), all of which had been transported to and used in its mill in Tennessee. The defendant interposed the defense that the contract sued upon was void because of the Kentucky statute similar to sec. 226.02 (9), Stats. 1949, the plaintiff not being licensed to transact business in Kentucky. The court held that the contract was made in continuance of the prior practice between the parties, which practice clearly established that the wheat was to be shipped from plaintiff's mill to Tennessee, and said (p. 292):

"The state court also attached some importance to the fact that after the grain was delivered on the cars the plaintiff might have changed its mind and have sold the grain at the place of delivery or have shipped it to another point in Kentucky. No doubt this was possible, but it also was improbable. With equal basis it could be said that a shipment of

merchandise billed to a point beyond the state of its origin might be halted by the shipper in the exercise of the right of stoppage *in transitu* before it got out of that state. The essential character of the transaction as otherwise fixed is not changed by a mere possibility of that sort. See *United Fuel Gas Co. v. Hallanan, supra.*

"For these reasons we are of opinion that the transaction was a part of interstate commerce, in which the plaintiff lawfully could engage without any permission from the state of Kentucky. . . ."

Thus *Dahnke-Walker Co. v. Bondurant, supra,* is authority for the principle that surrounding circumstances outside of the contract (in that case the past practice of dealing between the parties) may be resorted to for the purpose of determining whether the parties to the contract contemplated that the goods being purchased thereunder were to move only in interstate commerce. In the instant case it therefore was proper for the trial court to give weight to the fact that the plaintiff had no place of business in Wisconsin where it could make use of the motors in passing upon the question of whether the parties to the contract contemplated that the motors would only be shipped to a destination point without the state. By analogy, evidence of interpretation by the parties themselves of the contract ought to be also admissible for the same purpose as the surrounding circumstances. Such practical interpretation by the parties established the fact that all of the motors supplied by defendant under the contract were shipped to plaintiff at Chicago, thus negativing defendant's contention that the parties may have intended at the time of making the contract that some of the motors might be shipped to points within Wisconsin.

In the case of *Jerome P. Parker-Harris Co. v. Kissel M. C. Co., supra,* the plaintiff also was a Tennessee corporation and had an agreement with the defendant Wisconsin corporation, which was a manufacturer of automobiles in Hartford, Wisconsin, allotting the plaintiff the states of

Tennessee, Mississippi, Louisiana, and Oklahoma for the sale of defendant's motor cars. Such agreement provided that the plaintiff was not to sell automobiles in any territory other than the said four states, except upon the written consent of the defendant, with a provision for payment of liquidated damages in case of breach of such covenant. It also was provided in the agreement that plaintiff was to purchase from the defendant a certain number of automobiles at stated intervals for a specified price "f.o.b. cars at Hartford" to be shipped as directed by plaintiff. As in the instant case, the plaintiff's president came to Wisconsin and executed the agreement in Wisconsin. The plaintiff instituted action for breach of contract against the defendant and the defendant set up the defense that the plaintiff was a foreign corporation not licensed to do business in the state, and therefore the agreement was void under sec. 1770b, Stats. 1915. This court in its opinion stated (p. 519) :

"Defendant argues that the cars might be sold in Wisconsin by obtaining its consent. True, but that would be making another and different contract. If sold in this state without its consent, a heavy penalty must be paid. So it is clear that if the contract actually entered into is observed, the motor cars must be sold in the specified foreign territory and nowhere else. That the title passes to plaintiff in this state is immaterial. The fact remains that there was a purchase of goods in one state for shipment to and sale in other states and that constitutes interstate commerce."

Both *Dahnke-Walker Co. v. Bondurant, supra,* and *Jerome P. Parker-Harris Co. v. Kissel M. C. Co., supra,* make it clear, that the mere act of a foreign corporation in going into another state and there making a contract for the purchase of goods to be shipped in interstate commerce, does not constitute doing business within the state within the meaning of a statute such as sec. 226.02 (1), Stats. 1949, as the making of the contract is incidental to a transaction involving

interstate commerce. This accords with the well-accepted general rule. 20 C. J. S., Corporations, p. 60, sec. 1840c.

Even if we did not have the benefit in this case of the facts gathered from the surrounding circumstances, and practical interpretation of the contract by the parties themselves, which establish that only shipment of the motors in interstate commerce was contemplated by the parties when they entered into the contract, the case of *Metal Door & Trim Co. v. Hunt* (1934), 170 Okla. 240, 39 Pac. (2d) 72, is authority for the principle that if there is any presumption present, it is against the contract being so interpreted as providing for shipment intrastate of the goods being purchased. This is because it is presumed that the parties would not have contemplated a violation of law, which would be the case if the goods were shipped within the state, inasmuch as sec. 226.02, Stats. 1949, makes it unlawful for a foreign corporation to transact business within the state without a license. In other words, the theoretical possibility advanced by defendant that under the wording of the contract it would have been permissible to ship the motors to points in Wisconsin, because there is no provision in the contract itself which prevented the same being done, is rebutted by such presumption.

In *Metal Door & Trim Co. v. Hunt, supra,* an Indiana corporation contracted to manufacture, deliver, and erect equipment in a building in Oklahoma, but the contract did not specify where the equipment was to be manufactured. The provision for installation in Oklahoma would not have rendered the transaction one of doing business in Oklahoma, according to the Oklahoma court, if such installation was but an incident of the sale and shipment in interstate commerce, but the contract itself did not specify where the equipment was to be manufactured. Defendant contended it was possible therefore for the plaintiff Indiana corporation to have manufactured the equipment in Oklahoma, in which case the contract would not have been one involving inter-

state commerce. The Oklahoma court, in disposing of this contention, stated (p. 242):

"We have not overlooked the point made by counsel for defendant that the *contract itself does not specify* the articles are to be manufactured outside of the state of Oklahoma, and then shipped into the state to be erected and installed in the defendant's building. On the other hand, we cannot presume that the transaction contemplated manufacture and delivery by the plaintiff within the state of Oklahoma. *If there is any presumption at all under the applicable rule, it is the other way,* since the plaintiff alleged in its petition that it was a corporation duly organized, created, and existing by virtue of the laws of the state of Indiana, with offices and warehouses in La Porte, Ind., and that it was such a corporation and so located when the contract was made and performed. Obviously, the contract contemplated that the goods should be manufactured in Indiana and shipped from there into Oklahoma for erection and installation." (Emphasis supplied.)

It is therefore our conclusion that the learned trial court rightly determined that the contract in the instant case contemplated shipment of the motors to a point of destination outside of Wisconsin so as to involve interstate commerce thereby making the provisions of sec. 226.02, Stats. 1949, inapplicable thereto.

*By the Court.*—Order affirmed.