FAN-GIL CORPORATION v AMERICAN HOSPITAL SUPPLY
CORPORATION

1. SECURED TRANSACTIONS—PRIORITIES—AFTER-ACQUIRED PROPERTY—
UNIFORM COMMERCIAL CODE.

The rights of a secured creditor claiming under an after-acquired
property clause in a perfected security agreement remain para-
mount to the interest of a purchase money creditor if the
purchase money creditor neglects timely to perfect his interest
(MCLA 440.9312[4]).

2. CONTRACTS—PAROL EVIDENCE—INTEGRATION OF SEPARATE DOCU-
MENTS—UNIFORM COMMERCIAL CODE.

Parol evidence is admissible under the Uniform Commercial Code
to prove the intended integration of separate documents into a
single agreement (MCLA 440.2202).

3. CONTRACTS—SALES—SECURED TRANSACTIONS—PAROL EVIDENCE—
AMBIGUITIES.

Parol evidence is admissible to explain ambiguities in written
instruments, and was properly admitted in litigation involving
priorities of security interests to explain the statement in a bill
of sale that the bill of sale was subject to a sales agreement and
to explain in an otherwise typewritten security agreement both
the omission of the date and a handwritten figure for personal
services included in the amount to be secured.

4. SECURED TRANSACTIONS—UNIFORM COMMERCIAL CODE—SECURITY
INTEREST—TIME-OF ATTACHMENT.

The Uniform Commercial Code expressly provides that where the
parties do not intend to be bound until a price is agreed upon
there is no contract until the price is agreed upon; a sales and

REFERENCES FOR POINTS IN HEADNOTES
[1] 69 Am Jur 2d, Secured Transactions § 481.
[2] 17 Am Jur 2d, Contracts § 325.
[3] 17 Am Jur 2d, Contracts § 271.
   69 Am Jur 2d, Secured Transactions § 275.
[4] 68 Am Jur 2d, Secured Transactions § 37.
   69 Am Jur 2d, Secured Transactions § 332.
[5] 69 Am Jur 2d, Secured Transactions §§ 461–463.

security agreement for x-ray equipment and personal services executed with the intention of the parties that the transaction remain incomplete until they could agree on the amount which would include both the x-ray equipment and the personal services did not become a binding sales contract and security agreement until the amount owed for the equipment and the personal services was settled even though the executed agreement recited an agreed price for the equipment but left blank the date and the amount for the personal services, the agreement recited the terms of payment, a bill of sale reciting the security agreement for the equipment was executed and dated, the purchaser was in possession of the equipment, and a payment had been tendered in good faith by the purchaser prior to agreement on the amount for personal services (MCLA 440.2305[4]).

5. SECURED TRANSACTIONS—SALE OF COLLATERAL—GOING CONCERN—
   SHARE OF PROCEEDS.

One who retains the benefits of a transaction which he has a right to accept or reject cannot avoid its obligations; a secured creditor who consents to a sale of his collateral as part of a functional unit to realize the "going concern" value agrees to share in the proceeds at the same rate as the other secured creditors and, absent demonstrating that a separate sale would have resulted in a higher price, is estopped to collect the full balance due.

Appeal from Wayne, Charles Kaufman, J. Submitted Division 1 June 20, 1973, at Detroit. (Docket No. 14789.) Decided August 29, 1973.

Petition for dissolution by Samaritan Hospital Association. Dissolution and sale of all assets ordered. Fan-Gil Corporation and American Hospital Supply Corporation each asserts the priority of its security interest in certain x-ray equipment. Finding for Fan-Gil to share pro-rata with the other secured creditors. American Hospital Supply Corporation appeals and Fan-Gil Corporation cross-appeals. Affirmed.

*Sugar, Schwartz, Silver, Schwartz & Tyler* (by *John H. Shepherd),* for Fan-Gil Corporation.

*Logan & Huchla,* for American Hospital Supply Corporation.

Before: QUINN, P. J., and J. H. GILLIS and V. J. BRENNAN, JJ.

J. H. GILLIS, J. The trial court ordered the dissolution of Samaritan Hospital Association, a non-profit corporation, and the sale of all its assets, including certain x-ray equipment, located at Samaritan's Clinton Valley Hospital. American Hospital Supply Corporation asserted the priority of its interest in the x-ray equipment on the strength of an after-acquired property clause in a November, 1967, security agreement. Fan-Gil Corporation and Doctors Katz and Fannin[1] claimed their purchase money security interest in the equipment deserved priority.

American appeals the trial court's recognition of Fan-Gil's security interest and its subsequent award of approximately $10,000 from sale proceeds. Fan-Gil has cross-appealed, asserting the trial court erred in holding Fan-Gil estopped to recover the full balance of Samaritan's obligation and requiring it to share sale proceeds on a pro rata basis with other secured creditors.[2]

The facts demand our close attention as they are ultimately dispositive of the parties' rights. American sold hospital supply equipment to Samaritan from 1963–1965, receiving in return a promissory note and security interest in certain property. Thereafter, in 1967, Samaritan refinanced its indebtedness to American, executing a promissory

---

[1] Hereafter, for convenience, American Hospital Supply Corporation will be referred to as American, Samaritan Hospital Association as Samaritan, and Fan-Gil Corporation and Doctors Katz and Fannin as Fan-Gil.

[2] Because of the low sale price and service indebtedness of the hospital, only secured creditors shared in sale proceeds.

note for a larger amount and extending the security agreement to include after-acquired property. The financing statement evidencing this agreement, filed November 2, 1967, fully complied with MCLA 440.9401(1)(d); MSA 19.9401(1)(d).[3]

Late in 1967, two radiologists employed at Clinton Valley Hospital sought to terminate their 1964 employment contract with the hospital, apparently because the hospital had not reimbursed them for their services. The doctors desired to be paid for these services and also to sell the x-ray equipment to the hospital. Testimony indicated that the parties intended the transaction to remain incomplete until they could agree on an amount which would include both personal services and the x-ray equipment. By December 15, 1967, the doctors had terminated their association although the parties had not yet agreed on a sale price. That month, a sales and security agreement was prepared in which the date and an amount for personal services were left blank. The agreement indicated the x-ray equipment would be sold for $18,150. This agreement further provided for $1,000 monthly payments, $500 applied to the x-ray equipment debt, and $500 to the personal services debt.

A bill of sale dated January 22, 1968, and signed by the parties conveyed the x-ray equipment to the hospital, but also provided the sale was subject to the terms of the security agreement.

On February 2, 1968, Samaritan paid Fan-Gil $1,000. Samaritan apparently offered this as a good faith payment to appease Fan-Gil's anxiety about the delay in reaching agreement on the

---

[3] MCLA 440.9401(1)(d); MSA 19.9401(1)(d), provides: "The proper place to file in order to perfect a security interest is as follows:

* * *

"(d) in all other cases, in the office of the secretary of state."

personal services debt. On February 9, 1968, the doctors' accountants sent their final audit of the debt owed for personal services to the hospital, and a duplicate of their report to Fan-Gil's attorney. Sometime during the week of February 12, 1968, the sale and security agreement was delivered to Fan-Gil. Fan-Gil filed its financing statement on February 22, 1968.

American asserts the priority of its interest, claiming Fan-Gil, the purchase money creditor, failed to perfect its interest as required by MCLA 440.9312(4); MSA 19.9312(4).[4] If the purchase money creditor neglects to timely perfect his interest, the rights of the secured creditor claiming under the after-acquired clause remain paramount. *National Cash Register Co v Firestone & Co Inc,* 346 Mass 255; 191 NE2d 471 (1963).

American contends that Fan-Gil's security interest was not timely perfected since their interest attached *as early as* December 1967 when Samaritan received possession of the collateral, but Fan-Gil filed no financing statement until February 22, 1968. Citing *Semple v State Farm Mutual Automobile Insurance Co,* 215 F Supp 645 (ED Pa, 1963), they argue in the alternative that the security interest attached, *at the latest,* on February 2, 1968, since on that date an agreement for security existed, value had been given, and the debtor had rights in the collateral. Value of $2,000 was given on February 2, 1968; the debtor had rights in the collateral by its continuing possession; and the December 1967 security agreement provided and

---

[4] MCLA 440.9312(4); MSA 19.9312(4), provides: "A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or *within 10 days thereafter."* (Emphasis supplied.)

$18,150 amount for the x-ray equipment and $8,764.98 for personal services. American argues that even if the figure for personal service was inserted at a later time, the $18,150 amount was part of a separate agreement.

Fan-Gil asserts parol evidence is proper to show that the parties inserted the personal services amount at a later date. They also claim parol evidence is admissible to vary the January 22, 1968, bill of sale date to prove the transaction could not have been consummated until the week of February 12, 1968.

While we agree the trial court properly admitted parol evidence, we justify its admission on a different basis. Fan-Gil has cited extensive authority for the rule that the date written on the instrument is only presumptive evidence, and the true date may be shown by evidence *aliunde*. The law as stated does not apply to these facts since Fan-Gil has never suggested that the bill of sale was executed on a date different from January 22, 1968. For example, *Cook v Knowles,* 38 Mich 316 (1878), does provide authority for the claim that evidence of a delivery date later than the date of execution of an instrument may be shown. However, in light of the abolition of reliance on the passage of title,[5] we think better grounds exist to sustain appellees' position.

Several courts have suggested that UCC 2-202[6]

---

[5] MCLA 440.9202; MSA 19.9202, provides: "Each provision of this article with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor."

[6] The parallel Michigan enactment is MCLA 440.2202; MSA 19.2202, which provides: "Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented (a) by course of dealing or usage of trade (section 1205) or by

was meant to liberalize the presumption that a written contract is the total and final expression of the parties' agreement. *Cf. Zwierzycki v Owens,* 499 P2d 996 (Wyo, 1972), and cases cited therein. We agree with that line of cases and *Illinois C R Co v Brotherhood of Locomotive Engineers,* 443 F2d 136 (CA 7, 1971), which approved the use of parol evidence to prove the intended integration of separate documents in a single agreement.

Finally, and more traditionally, parol evidence is admissible to explain the ambiguities in the various instruments here at issue. Ambiguities needing explanation included the statement that the bill of sale was subject to the sales agreement, the omission of the date from the security agreement, and the handwritten figure for personal services included in the otherwise typewritten security agreement. For all the above reasons, parol evidence was properly admitted.

We disagree with American's contention that the security interest attached on February 2, 1968, at the latest. No agreement for security existed until the amount owed for the equipment and the personal services was settled. MCLA 440.2305(4); MSA 19.2305(4), expressly contemplates a situation where the parties do not intend to be bound until the price is agreed upon. Testimony indicated agreement between the parties was impossible until the week of February 12, 1968. The trial judge properly concluded that Fan-Gil's timely filed security interest took priority over American's interest in the collateral.

The next issue is whether the trial court erred in finding Fan-Gil estopped to collect the full

course of performance (section 2208); and (b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

balance due from sale proceeds. The trial court permitted Fan-Gil to collect only 58.5% of the balance due, the same rate as other secured creditors. Fan-Gil argues that no penalty should be exacted for its agreement permitting the equipment to remain on the premises, and that its consent operated to confer a benefit on the hospital by allowing the hospital to extract the maximum price from the sale of the hospital as a going concern.

Certainly, Fan-Gil conferred a benefit on the hospital by not removing the x-ray equipment. However, Fan-Gil also received a benefit from the receiver and other secured creditors. Fan-Gil never demonstrated that a separate sale would have resulted in a higher price for the equipment. The trial court could have reasonably found that a separate sale would probably have returned less. A separate sale would have required removal, transportation, and reinstallation of the equipment at the buyer's place of business. A reasonable buyer would have considered this factor and reduced his offer if he bore the expense; conversely, if Fan-Gil had borne the expense, its profits would have been substantially reduced. Sound business sense leads us to conclude that if Fan-Gil could have realized a greater profit by a separate sale, Fan-Gil would have done so.

Adoption of Fan-Gil's position would mean that all secured creditors who consent to a sale of their collateral as part of a functional unit to realize going concern value could claim the full balance owed irrespective of the amount recovered on the sale. The unpaid balance owed could easily exceed the proceeds. Principles of equity and logic require rejection of this view. One who retains the benefits of a transaction which he has the right to accept

or reject cannot avoid its obligations. *Merriman v Westlawn Cemetery Association,* 304 Mich 12; 7 NW2d 126 (1942).

The trial court decision is affirmed. No costs, neither party having prevailed in full.

All concurred.