HOUSE OF STAINLESS, INC., Respondent, v. MARSHALL & ILSLEY BANK, Appellant.

*No. 75–95. Argued November 1, 1976.—Decided January 18, 1977.*
(Also reported in 249 N. W. 2d 561.)

For the appellant there were briefs by *Axley, Brynelson, Herrick & Gehl* and oral argument by *Timothy D. Fenner,* all of Madison.

For the respondent there was a brief and oral argument by *Edward S. Grodin* of Milwaukee.

ROBERT W. HANSEN, J.   Two issues are raised on this appeal. We begin discussion with the first issue— whether plaintiff-respondent Stainless was entitled to bring this action in Wisconsin against defendant-appellant Marshall & Ilsley Bank.

*CAPACITY TO SUE.*

M & I Bank contends Stainless Steel is not entitled to bring this action in Wisconsin because it has no certificate of authority to transact business in this state. Sec. 180.847 (1) Stats., requires a certificate of authority for such transacting of business.[1] It is uncontroverted that Stainless had no such certificate.

Stainless claims a certificate of authority was not here required, citing sec. 180.801 (4), Stats. This section provides that procuring orders in Wisconsin which re-

---

[1] Sec. 180.847(1), Stats., providing in pertinent part: "No foreign corporation transacting business in this state without a certificate of authority, if a certificate of authority is required under this chapter, shall be permitted to maintain or defend a civil action or special proceeding in any court of this state, until such corporation has obtained a certificate of authority. . . ."

quire acceptance "without this state" does not constitute "transacting business in this state."[2] Stainless is an Illinois corporation with its headquarters and principal place of business in Chicago. It employs four full-time Wisconsin salesmen and two secretaries in its Wisconsin office in Wauwatosa. Stainless leases these office facilities along with four automobiles for use by its salesmen in Wisconsin and the Upper Peninsula of Michigan. However, all orders secured in Wisconsin are subject to approval of the general office in Chicago.[3] Thus, orders solicited and secured in this state required main office approval "without this state."

A predecessor statute to sec. 180.847, Stats.[4] requiring a certificate of authority to transact business in this state has been construed not to pertain to matters of interstate commerce. We have there held that a contract made in this state but not to be complete so as to be binding on a foreign corporation party until approved at its home office outside this state, was not within such statute, and that such a contract was a matter of interstate commerce and thus not within the statute.[5]

[2] Sec. 180.801(4), Stats., providing in pertinent part: ". . . a foreign corporation shall not be considered to be transacting business in this state . . . by reason of carrying on in this state any one or more of the following activities:

". . .

"(d) Soliciting or procuring orders, whether by mail or through employees or agents or otherwise, where such orders require acceptance without this state before becoming binding contracts."

[3] Deposition of John R. Miller, regional sales manager for Stainless, which detailed activities of Stainless in Wisconsin. Mr. Miller stated in his deposition that an order or an application for an order taken in Wisconsin is validated by some person in authority at the Stainless office in Chicago. All shipping comes from Chicago. No inventory of any kind is stored or handled in Wisconsin.

[4] Former sec. 1770(b), Stats. 1915.

[5] *Charles A. Stickney Co. v. Lynch,* 163 Wis. 353, 357, 158 N.W. 85, 86 (1916). *See also: Jerome P. Parker-Harris Co. v. Kissel M. C. Co.,* 165 Wis. 518, 163 N.W. 141 (1917).

■ While the interstate commerce limitation as to the state requirement[6] may well be here applicable,[7] it is enough to hold that the nature and extent of Stainless' operations fit within the sec. 180.801(4) exception to the sec. 180.847(1) requirement of securing a certificate. It follows that Stainless was not required to secure a certificate of authority and is entitled to bring this action in Wisconsin.

## PRIORITIES AMONG CREDITORS.

M & I claims priority over Stainless via a perfected security interest in the after-acquired property of Alkar. Under its loan and security agreement dated November 1, 1971, and the financing statements properly filed and recorded in connection therewith, M & I did have a security interest in all of Alkar's inventory, then owned or thereafter acquired.[8] There is no dispute as to the validity of this perfected security interest.

M & I claims priority for its claim under sec. 409.312, Stats., which determines priority among conflicting interests in the same collateral. Our court has held that if, as here, the subject matter of the security interest or collateral constitutes "inventory" of the debtor, ". . . the priority of the security interest is determined by sec. 409.312(3)."[9] Under this section in order for Stainless to have priority, it would have to have a purchase money security interest which requires perfecting its interest at

[6] Art. I, sec. 8, U.S. Const. *See: Standard Sewing Equip. Corp. v. Motor Specialty*, 263 Wis. 467, 57 N.W.2d 706 (1953) construing the immediate predecessor statute to sec. 180.847, Stats.— former sec. 226.02, Stats. 1949.

[7] *See: Cheney Brothers Co. v. Massachusetts*, 246 U.S. 147 (1918).

[8] As required by secs. 409.303(1) and 409.302(1), Stats.

[9] *Burlington Nat. Bank v. Strauss*, 50 Wis.2d 270, 276, 184 N.W. 2d 122, 125 (1971).

the time the debtor (Alkar) received possession.[10] Additionally, it is contended that such section requires that a prior perfected lender, here M & I, must be given actual notification by a subsequent purchase money lender before the debtor receives possession of the collateral covered by the purchase money security interest.[11]

In the case before us no such notice was given, and the Stainless interest was not perfected by filing of the agreement or of any financing statements covering the property involved. Absent such perfection, M & I sees sec. 409.312, Stats., as giving priority to a secured creditor claiming under an after-acquired property clause in a pre-existing security agreement over a creditor who neglects to perfect his purchase money interest. We will resolve this priority question, *infra*.

Stainless, as a supplier of goods on credit, claims priority for its claim under sec. 402.702(2), Stats., providing for seller's remedies on discovery of buyer's insolvency. This statute provides a right to reclaim upon demand made within ten days after receipt of the goods.[12] It is undisputed that Stainless delivered goods

---

[10] Sec. 409.312(3)(a), Stats. 1971, providing: "(3) A purchase money security interest in inventory collateral has priority over a conflicting security interest in the same collateral if:

"(a) The purchase money security interest is perfected at the time the debtor receives possession of the collateral; . . ."

[11] *Id.* with sub. (b) adding: "(b) Any secured party whose security interest is known to the holder of the purchase money security interest or who, prior to the date of the filing made by the holder of the purchase money security interest, had filed a financing statement covering the same items or type of inventory, has received notification of the purchase money security interest before the debtor receives possession of the collateral covered by the purchase money security interest; . . ."

[12] Sec. 402.702(2), Stats., providing in pertinent part: "Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within 10 days after the receipt. . . ."

to Alkar and within ten days sought reclamation of said goods.

However, Stainless did not secure possession or repossession of the goods sold and shipped to Alkar. The right to reclaim on discovery of insolvency is subject to an exception where the rights of "a buyer in ordinary course or other good faith purchaser" are involved.[13] Thus, while possessing only voidable title to the goods transferred, Alkar here could transfer title to a good faith purchaser.[14] The trial court here held M & I not to be a "good faith purchaser" drawing a distinction between "goods" and "future goods" and treating differently the M & I interest under its security agreement as to then-held and after-acquired property of Alkar. The issue as to applicability of the exemption to M & I as a "good faith purchaser" is one of law, to be resolved by this court.[15]

We see two issues of law, not one, presented. The first is whether Stainless comes within the provisions of sec. 409.312, Stats., providing a priority for purchase money security interest holders only if such interest is "perfected." Where such creditor fails or neglects to timely perfect his interest as the statute requires, the cases in point clearly agree that the rights of a secured creditor claiming under an after-acquired property clause in a pre-existing security agreement are paramount.[16]

---

[13] Sec. 402.702(3), Stats., providing in pertinent part: "The seller's right to reclaim under sub. (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser under s. 402.403. Successful reclamation of goods excludes all other remedies with respect to them."

[14] See: Sec. 402.403(1), Stats., relating to transfer of title to good faith purchaser, and providing: "A purchaser of goods acquires all title which his transferor had or had power to transfer. . . . A person with voidable title has power to transfer a good title to a good faith purchaser for value. . . ."

[15] Browndale International v. Board of Adjustment, 60 Wis.2d 182, 189, 208 N.W.2d 121, 130 (1973).

[16] E.g., Fan-Gil Corp. v. American Hospital Supply Corp., 13 U.C.C. Rep. Serv. 733, 49 Mich. App. 106, 211 N.W.2d 561 (1973);

■ We hold that a seller of goods on credit must perfect his claim to priority, under sec. 409.312, Stats., by filing the agreement and financing statements as there required. We see this result as entirely consistent with the overall purpose of the Uniform Commercial Code of allowing all parties to rely on filed security interests dealing with a debtor's property.[17] Since Stainless does not have a perfected purchase money security interest, sec. 409.312, Stats., provides no basis for a priority claim in the property sold by it to Alkar.

Thus, Stainless' only basis of priority is sec. 402.702, Stats. The second question of law raised on this appeal is whether M & I is a "good faith purchaser" and thus within the exception to the right of reclamation granted by sec. 402.702, Stats. What cases there are dealing with this narrow question appear to agree with the affirmative answer sought by M & I on this appeal.

*In re Hayward Woolen Co.*[18] dealt with the opposing claims of a reclaiming seller on credit and a secured party under provisions identical with those in our Wisconsin law. There, wool goods were delivered to a bankrupt buyer and rights to reclaim these goods were asserted by the sellers, otherwise unsecured, and their

---

*General Motors Acceptance Corp. v. Lumbercraft East,* 13 U.C.C. Rep. Serv. 144 (N.Y. Civil Court 1973); *Stowers v. Mahon,* 13 U.C.C. Rep. Serv. 124 (U.S. Ct. App., 5th Cir. 1973); *Galleon Industries v. Lewyn Machinery Co.,* 12 U.C.C. Rep. Serv. 1224, 279 So.2d 137 (Ala. Civil Appeals 1973); and *National Bank & Trust Co. v. Moody Ford,* 9 U.C.C. Rep. Serv. 1276, 149 Ind. App. 479, 273 N.E.2d 757 (1971).

[17] *Chrysler Corp. v. Adamatic,* 59 Wis.2d 219, 240, 208 N.W.2d 97, 107 (1973), this court stating: "We agree generally with the position submitted by the National Commercial Finance Conference as amicus curiae. It points out that the Code generally gives preference to property interests which are evidenced either by recording or possession and that, to adopt the view of Chrysler, the financier of an inventory would no longer be able to rely on recorded interests and the status of his debtor's inventory."

[18] 3 U.C.C. Rep. Serv. 1107 (D. Mass. Ref. 1967).

assignees. The opposing claimant held a perfected security interest in the after-acquired wool inventory of the bankrupt buyer.

The court in *Hayward* reasoned as follows: Seller's right to reclaim on the ground of buyer's insolvency is subject to the rights of a good faith purchaser under U.C.C. 2–702(3). U.C.C. sec. 2–403(1) provides "a person with voidable title has power to transfer a good title to a good faith purchaser for value." Hayward, the insolvent buyer, is a party having a voidable title. Textile, the party with a security interest in after-acquired collateral, qualifies as a purchaser under U.C.C. sec. 1–201 (32, 33).[19] Textile's pre-existing claim constitutes value under U.C.C. sec. 1–201(44)(b).[20]

The *Hayward* court referred to the opinion of two commentators who have expressed the opinion that the seller's right of reclamation is inferior to a perfected security interest in the goods arising under an after-acquired property clause.[21]

The court held, therefore, "that Textile, as the holder of a security interest in the debtor's after-acquired inventory, acquired title to the goods remaining in Hayward's possession, as a good faith purchaser for value, and that Textile's rights to such goods are superior to those of the

---

[19] Sec. 401.201(32), (33), Stats., provides:

"(32) 'Purchase' includes taking by sale, discount, negotiation, mortgage, pledge, lien, issue or re-issue, gift or any other voluntary transaction creating an interest in property.

"(33) 'Purchaser' means a person who takes by purchase."

[20] Sec. 401.201(44), Stats., provides:

"'Value' . . . a person gives 'value' for rights if he acquires them:

"  . . .

"(b) As security for or in total or partial satisfaction of a pre-existing claim; . . ."

[21] *See:* Hogan, *The Marriage of Sales to Chattel Security in the UCC: Massachusetts Variety,* 38 BU L. Rev. 571, 580, 581; Note, *Selected Priority Problems in Secured Financing under the UCC,* 68 Yale L.J. 751, 758.

reclamation petitioners. It follows that the reclamation petitions must be denied."[22]

The same result was reached in a North Carolina case treating this issue. *See: First-Citizens Bank & Trust Co. v. Academic Archives,* 10 N.C. App. 619, 624, 179 S.E.2d 850, 853, where the court described the interest of the secured party as follows:

"The favored category that plaintiff best fits is that of a 'good faith purchaser.' The good faith of plaintiff is not questioned by appellants; the Code describes 'good faith' as 'honesty in fact.' [under U.C.C.] 1–201(19). A 'purchaser' is one who takes by purchase, and a 'purchase' includes 'taking by sale, discount, . . . lien, . . . or any other voluntary transaction creating an interest in property.' [under U.C.C.] 1–201(33) (32)."

After further determining that value was given, the court concluded that a holder of a perfected security interest in after-acquired property qualifies as a good faith purchaser so far as the definitions go. Judgment was entered for the secured party.

Finally, in *Guy Martin Buick, Inc. v. Colorado Springs Nat. Bank,* 184 Colo. 166, 519 Pac.2d 354, 358 (1974), the court held:

"In our view, the definition of 'purchase' and 'purchaser,' as set forth in the Colorado Uniform Commercial Code, are sufficiently broad to encompass a lender who takes a security interest in goods as security for its loan."

Analyzing the result reached in *Hayward,* one commentator concluded that ". . . it is hard to quarrel with the decision as an application of statutory provisions."[23]

---

[22] *In re Hayward Woolen Co.,* supra, at 1111, 1112.

[23] Skilton, *Security Interest in After-Acquired Property Under the Uniform Commercial Code,* 1974 Wis. L. R. 925, 946, commenting further on *Hayward:* "Fireside equities may seem to favor the seller over the secured party who did not give new value in latching on to the after-acquired property. The secured party with the after-acquired property clause may seem to get a windfall

Stainless argues the 1969 amendment deleting "lien creditor" as one subject to the rights of reclamation mandates a contrary conclusion.[24] But we do not find that amendment as intending[25] or resulting in a changed definition of good faith purchaser under sec. 402.702, Stats.[26] In part because uniform codes ought be interpreted uniformly, we follow *Hayward* and the decisions in other jurisdictions to hold that M & I here was a "good faith purchaser" and exempted by sec. 402.702(3) from the Stainless' right of reclamation under the statute.

Stainless' claim that a seller of goods seeking to reclaim goods from a now bankrupt buyer has priority over the claim of a party with a perfected security interest in after-acquired property of the debtor necessarily fails.

---

at the expense of the sellers, who provided the property. But it is hard to quarrel with the decision as an application of statutory provisions. . . .

"The case illustrates the 'voidable title' area. Title passes to buyer, but seller has a right to rescind the title, until a bona fide purchaser for value intervenes—that is the general restitutionary rule. Section 2–702 merely tinkers with it."

[24] Sec. 402.702(3), Stats., as amended 1969.

[25] *See:* Comment to sec. 402.702(3), 40A Wis. Stats. Annot.: "The amendment leaves open the question of the extent to which an actual creditor, such as a secured party may be a good faith purchaser within the meaning of this subsection."

[26] The Stainless complaint in this action appears to claim that it had "title" to the steel goods sold to Alkar. However, testimony of John R. Miller, regional sales manager for Stainless, makes evident that the goods were sold to Alkar and the only remaining matter was for Stainless to collect on the account. On this record, with delivery made and invoice submitted, we find, as a matter of law, no basis for a claim of retention of title by Stainless to the goods shipped. Even if there were a basis for finding a reservation of title until the purchase price were paid, it would still be necessary to file a financing statement because as one writer has put it: ". . . a secured transaction should be entered into and a proper filing made if required to protect the creditor's interest as against third persons." Anderson, *Uniform Commercial Code,* vol. 2 at 26 (2d Ed. 1971).

This fails because Stainless did not perfect its claim by filing as required by sec. 409.312, Stats. Since it did not do so, sec. 409.312 is not available to Stainless.

■ Sec. 402.702(2), Stats., the right of reclamation of goods, is also not available to Stainless since M & I is held to be a "good faith purchaser" and, under sec. 402.702(3), the seller's right to reclaim is subject to the rights of such good faith purchaser.

It follows that the trial court order granting the Stainless motion for summary judgment must be reversed and set aside. It likewise follows that the trial court order denying the M & I motion for summary judgment must be set aside. Judgment is reversed and cause remanded with directions to the trial court to grant summary judgment in favor of the appellant, Marshall & Ilsley Bank, and against the respondent, The House of Stainless Steel, Inc.

*By the Court.*—Order and judgment reversed, and cause remanded for further proceedings consistent with this opinion. Costs are awarded to appellant.

DAY, J., took no part.