**KENNETT–MURRAY & CO., a Division of Kennett-Murray Corp., a Foreign Corporation, Appellant,**

**v.**

**The PAWNEE NATIONAL BANK, a corporation, the First National Bank of Pawnee, a corporation, the Cleveland National Bank, a corporation, Charlotte A. Dunn, an Individual, Sue B. Ellison, Administratrix of the Estate of Nolan Dunn, Deceased, Paul Sanders, Drexel Connally and Eric Barber, d/b/a S & C Cattle Company, Appellees.**

No. 50956.

Court of Appeals of Oklahoma, Division No. 1.

May 22, 1979.

Rehearing Denied June 26, 1979.

Released for Publication by Order of Court of Appeals July 26, 1979.

Richard A. Koehler, Kansas City, Mo., Armstrong, Burns, Baumert & Maddox by John G. Maddox, Ponca City, for appellant.

Richard F. Burt, Jr., Tulsa, for appellee The Pawnee National Bank.

Osborn & Henry by Lynn R. Osborn, Pawnee, for appellee The First National Bank of Pawnee.

Speck, Philbin, Fleig, Trudgeon & Lutz by Arnold T. Fleig, Oklahoma City, for appellee Charlotte A. Dunn.

BOX, Judge:

An appeal by Kennett-Murray & Company, plaintiff, from the judgment of the trial court in an action to impress a constructive trust upon assets in an estate and for damages against the defendant bank, Pawnee National Bank.

This appeal concerns the distribution of certain funds in the estate of Nolan Dunn and Pawnee National Bank's handling of some drafts drawn on Dunn. Dunn was a cattle buyer residing in Pawnee, Oklahoma, who bought cattle on order for various customers. Kennett-Murray is a livestock dealer in Burkville, Alabama. For six or seven years before his death in June 1976, Dunn had been buying cattle from Kennett-Murray. Since October 1975 they had employed the following procedure. Dunn would telephone Kennett-Murray with an order. When the cattle were gathered, Kennett-Murray would prepare an invoice, a bill of lading, and a draft. The original invoice and copies of the bill of lading and draft would be delivered with the cattle, and Dunn would take possession of the cattle immediately upon delivery. When the cattle were shipped, Kennett-Murray would deposit the original draft with its bank in Montgomery, Union Bank & Trust Company (Union Bank), and would receive provisional credit. Union Bank would then forward the drafts by mail for collection, accompanied by a collection letter, to Dunn's bank, Pawnee National Bank. When the drafts arrived Pawnee National Bank would call Dunn, who would go to the bank and accept the drafts. The drafts would then be paid by cashier's check mailed from Pawnee National Bank to Union Bank. This procedure apparently worked well until May 1976. In May and early June 1976 Dunn did not pay nine drafts, totaling $130,631.63, which were returned to Union Bank.

During the dealings between Dunn and Kennett-Murray in May and June of 1976, two appellee banks, Pawnee National and First National Bank of Pawnee, held perfected security interests in Dunn's cattle. Both security agreements contained after-acquired property clauses providing that cattle acquired by Dunn while the indebtedness was still outstanding would also secure the indebtedness, and both security agreements and financing statements covered proceeds. Also, during this time Dunn was insolvent within the meaning of the Oklahoma Uniform Commercial Code (Code).

Nolan Dunn died in an accident on June 8, 1976. In July 1976 his administratrix petitioned the trial court for a determination of the disposition of certain assets remaining in the estate. Those assets were 29 steers (later sold and the proceeds held), a bank account with a balance of $63,239.05 in the names of Dunn and his wife as joint tenants, and checks in the amount of $6,630.00 and $3,072.46 from the sale of cattle. In August 1976 Kennett-Murray filed a petition seeking to impress a constructive trust on those assets and seeking damages from Pawnee National Bank for the alleged late return of the unpaid drafts. Kennett-Murray requested but was denied a jury trial. The actions of the administratrix and Kennett-Murray were consolidated and tried to the court in two stages in March and April 1977. After Kenneth-Murray's evidence on the constructive trust issue, the trial court sustained demurrers to the evidence. On the issue of damages against Pawnee National Bank, the court held for the bank. Kennett-Murray has perfected this appeal.

### I.

We turn first to the issues relating to Kennett-Murray's action for a constructive trust.

■ The trial court found the sales involved to be credit sales. Aside from stating that the drafts used in the transactions were demand drafts and that "ordinarily a draft payable on demand (sight draft) evidences a cash transaction," Kennett-Murray does not contest this finding. The evidence supports this finding, and we agree that these were credit sales.

■ Our next consideration is whether Kennett-Murray is entitled to a constructive trust in its favor. Kennett-Murray bases its claim on what it alleges to be Dunn's fraudulent misrepresentation of solvency and intent to pay, by ordering the cattle when he was insolvent and had ceased to pay his debts in the ordinary course of business. 12A O.S.1971, § 1–201(23). According to the Code, Dunn's or-

ders were at least tacit misrepresentations. 12A O.S.A. § 2–702, U.C.C. Comment 2 states in part:

> Subsection (2) [of § 2–702] takes as its base line the proposition that any receipt of goods on credit by an insolvent buyer amounts to a tacit business misrepresentation of solvency and therefore is fraudulent as against the particular seller.

The appellees contest this point, but we will assume—without deciding—that Kennett-Murray has proven all of the necessary elements for a constructive trust. Though it is also contested, we will likewise assume that Kennett-Murray has sufficiently traced all of the cattle and proceeds upon which it seeks to impress the constructive trust.

In a situation like the one before us, the Code gives a seller the right to reclaim his goods. 12A O.S.1971, § 2–702(2) provides in part:

> Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten (10) days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three (3) months before delivery the ten-day limitation does not apply.

There are two conditions to the exercise of this right of reclamation: the seller must discover the buyer's insolvency within ten days of the buyer's receipt, and the seller must demand the goods within the same ten days. 12A O.S.A. § 2–702, U.C.C. Comment 2. The only exception to this time limit is when the buyer has made a written representation of solvency within three months before delivery. *Id.* Kennett-Murray did not act within ten days, and Dunn had made no written representation of solvency. Thus under the law Kennett-Murray was not entitled to exercise its right of reclamation.

 Nor could Kennett-Murray pursue any other remedy based on fraud. The Code gives a right of reclamation, but preempts other equitable remedies. 12A O.S. 1971, § 2–702(2) further provides:

> Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

There are no Oklahoma cases construing this section, but the language of the statute could hardly be more explicit. In *In re Goodson Steel Corp.,* 10 U.C.C. Rep.Serv. 387, 392 (S.D.Tex.1968) (in bankruptcy), the referee held:

> This version of the Code makes clear that § 2.702[2–702] has pre-empted the field entirely, and that if a seller wishes to reclaim he may do so only pursuant to § 2.702 [2–702] along with whatever "lien creditor" limitations are found therein; and that a seller no longer may even try to argue that he has additional common law rescission rights based on fraud on top of his statutory rights under § 2.702[2–702].

*Accord, United States v. Wyoming National Bank,* 505 F.2d 1064, 1068 (10th Cir. 1974); *First-Citizens Bank & Trust Co. v. Academic Archives, Inc.,* 10 N.C.App. 619, 179 S.E.2d 850, 853 (1971). We agree with the conclusions of these courts, and we hold that section 2–702(2) precludes all of an unpaid credit seller's equitable remedies for fraud except reclamation.

We further note that even if Kennett-Murray had pursued its rights under section 2–702 within ten days, it would nevertheless be subordinate to the two banks with perfected security interests and after-acquired property clauses. 12A O.S.1971, § 2–702(3) provides:

> The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser under this Article (Section 2–403). Successful reclamation of goods excludes all other remedies with respect to them.

Section 2–403 provides in pertinent part that "[a] person with voidable title has power to transfer a good title to a good faith purchaser for value." 12A O.S.1971, § 2–403(1).

In the case before us the two banks qualify as good faith purchasers for value. "Good faith" is defined in 12A O.S. 1971, § 1–201(19) as "honesty in fact in the conduct or transaction concerned." Kennett-Murray does not challenge the honesty in fact of either bank. "Purchaser" is defined in section 1–201(33) as "a person who takes by purchase." "Purchase" is defined in section 1–201(32) to include "taking by sale, discount, negotiation, mortgage, pledge, lien, issue or re-issue, gift or any other voluntary transaction creating an interest in property." This would include an Article 9 security interest such as the ones held and perfected by the appellee banks. "Value" is defined in section 1–201(44)(b) to include "security for or in total or partial satisfaction of a pre-existing claim." This clearly includes an Article 9 security interest. The issue has not been passed upon by the Oklahoma Supreme Court, but it is the position of the majority of courts that have decided the issue that a secured party can qualify as a good faith purchaser for value and receive priority over an unpaid seller. *Stowers v. Mahon (In re Samuels & Co.),* 526 F.2d 1238, 1242 (5th Cir. 1976) (per curiam), *cert. denied,* 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976); *R. J. Reynolds Tobacco Co. v. Friedewald (In re Bowman),* 25 U.C.C. Rep.Serv. 738, 742 (N.D.Ga.1978) (in bankruptcy); *In re Hayward Woolen Co.,* 3 U.C.C. Rep.Serv. 1107, 1111–12 (D.Mass.1967) (in bankruptcy); *General Electric Credit Corp. v. Tidwell Industries, Inc.,* 115 Ariz. 362, 565 P.2d 868, 871 (1977) (in banc); *Guy Martin Buick, Inc. v. Colorado Springs National Bank,* 184 Colo. 166, 173–74, 519 P.2d 354, 358 (1974) (en banc); *Swets Motor Sales, Inc. v. Pruisner,* 236 N.W.2d 299, 304 (Iowa 1975); *Jordan v. Butler,* 182 Neb. 626, 633–34, 156 N.W.2d 778, 783 (1968); *First-Citizens Bank & Trust Co. v. Academic Archives, Inc.,* 10 N.C.App. 619, 623–24, 179 S.E.2d 850, 853 (1971); *Stumbo v. Paul B. Hult Lumber Co.,* 251 Or. 20, 35 n. 10, 444 P.2d 564, 571 n. 10 (1968) (in banc); *House of Stainless, Inc. v. Marshall & Ilsley Bank,* 75 Wis.2d 264, 272–74, 249 N.W.2d 561, 565–67 (1977). *Contra, In re American Food Purveyors, Inc.,* 17 U.C.C. Rep.Serv. 436, 441 (N.D.Ga. 1974) (in bankruptcy). We also note that, though the case was not published in the *Pacific Reporter,* Division 2 of this Court has reached the same result. *First National Bank & Trust Co. v. Jim Payne Pontiac GMC, Inc.,* 20 U.C.C. Rep.Serv. 768, 775 (Okl.App.1976). We hold that a secured party can qualify as a good faith purchaser for value under sections 2–702 and 2–403, and if one does so qualify (as both banks do herein) he is entitled to priority over an unpaid credit seller.

This may seem to be a harsh result to Kennett-Murray. We observe, however, that through the simple expedient of taking and perfecting a purchase money security interest under 12A O.S.1971, § 9–312(3), Kennett-Murray could have acquired a substantial measure of protection against, as well as priority over, the security interests of the banks. Several of the cases cited above make the same observation. *Stowers v. Mahon (In re Samuels & Co.),* 526 F.2d at 1247–48; *R. J. Reynolds Tobacco Co. v. Friedewald (In re Bowman),* 25 U.C.C. Rep. Serv. at 745; *General Electric Credit Corp. v. Tidwell Industries, Inc.,* 565 P.2d at 871–72; *First National Bank & Trust Co. v. Jim Payne Pontiac GMC, Inc.,* 20 U.C.C. Rep. Serv. at 775; *Stumbo v. Paul B. Hult Lumber Co.,* 251 Or. at 37, 444 P.2d at 572; *House of Stainless, Inc. v. Marshall & Ilsley Bank,* 75 Wis.2d at 271, 275, 249 N.W.2d at 565, 567.

In view of the foregoing, we hold that Kennett-Murray was not entitled to have a constructive trust imposed upon the assets in question. It was therefore not error for the trial court to sustain the demurrers of the appellees to Kennett-Murray's evidence.

### II.

We turn next to Kennett-Murray's action against Pawnee National Bank for damages. The essence of the claim is that the bank failed to follow the instructions of its transferor, Union Bank, by not informing Union Bank that the drafts had not been paid or returning them in timely fashion. Kennett-Murray contends that this de-

lay was unreasonable and that as a result of it Kennett-Murray was unable to exercise its remedies under the Code as a seller to protect itself. Kennett-Murray seeks damages in the face amount of the drafts. The trial court refused a jury trial on this issue, and Kennett-Murray asserts error.

There is no question that this action for damages is one of legal cognizance. In its petition, Kennett-Murray joined this action with claims of purely equitable cognizance. Pawnee National Bank contends that Kennett-Murray was not entitled to a jury trial on any issues in the case and refers us to *Newbern v. Farris,* 149 Okl. 74, 299 P. 192, which states the rule that when a defendant in an equitable action brings a legal counterclaim, the defendant is not entitled to a trial by jury on the legal issues. However, the case does not apply to the situation before us. In this case Kennett-Murray, as plaintiff, brought both legal and equitable claims in its petition.

In the first paragraph of the syllabus in *State ex rel. Dabney v. Wm. Cameron & Co.,* 147 Okl. 1, 294 P. 104, 104 (per curiam), the Oklahoma Supreme Court held:

> Where the plaintiff declares upon two causes of action, one cognizable in law, the other in equity, and neither remedy is paramount to or a foundation for the other, the court at his discretion may submit the equity case to a jury, *but he is required to submit the law case to a jury,* unless the same has been waived. [Emphasis added.]

And in the third paragraph of the syllabus in *Chouteau v. Hornbeck,* 125 Okl. 254, 257 P. 372, 372, the Court held:

> Where under our statutes the plaintiff declares upon two causes of action involving the title to real estate, the one in equity and the other in law, the court at his discretion, and for his advice, may submit the equity case to the jury, *but it is his duty to submit the law case to the jury for its determination.* [Emphasis added.]

See also *Garrett v. Kennedy,* 193 Okl. 605, 145 P.2d 407, 408–9 (syllabus ¶ 4); *Mashunkashey v. Mashunkashey,* 189 Okl. 60, 113 P.2d 190, 190 (syllabus ¶ 2).

Neither Kennett-Murray's claim for a constructive trust nor its claim for damages was paramount to or a foundation for the other one. Also, the facts that Kennett-Murray had the burden of proving were different for each claim; and even though Pawnee National Bank was a defendant to each claim, its position in each one (competing secured creditor vs. allegedly negligent party) was entirely different. We hold that Kennett-Murray is entitled to a trial by jury on its claim for damages against Pawnee National Bank. It was error for the trial court to refuse to grant a jury trial, and we therefore reverse the trial court's judgment in favor of Pawnee National Bank on that issue.

The judgment of the trial court is affirmed on the action for a constructive trust. On the action for damages against Pawnee National Bank, the judgment of the trial court is reversed and the cause is remanded for a trial by jury.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

ROMANG, P. J., and REYNOLDS, J., concur.