Harold Baer, J.
 

 The plaintiff seeks payment for merchandise delivered during the year 1968. Plaintiff is a publisher in France. Defendant is an importer and distributor of French publications. All transactions called for payment in francs in Paris. The balance claimed to be due on January 1, 1969, is 243,346 francs.
 

 There are a number of affirmative defenses. Defendant challenges jurisdiction on the theory that plaintiff does business in this State and has failed to comply with section 1312 of the Business Corporation Law. That plaintiff has refused to credit defendant for returned books and has refused to credit discounts or bonuses to which defendant is entitled. Finally, that plaintiff, although all dealings were in French francs, has applied an improper rate of exchange in demanding judgment.
 

 Deciding the jurisdictional question first, this court finds that plaintiff was not “ doing business ” in this State within the meaning of the Business Corporation Law so as to require the filing of a certificate with the Secretary of State.
 

 Many orders for books from the plaintiff were channelled through the office of Hachette, Inc., the New York corporate agent of the plaintiff. It would forward such orders to plaintiff’s office in Paris where all decisions were made. The testimony was that no employees of Hachette, Inc., had any authority to negotiate contracts or to bind plaintiff in any way. All billings and invoices originated from plaintiffs in Paris and were1, in fact, expressed in and payable in French francs. All contracts were subject to acceptance in Paris. While a
 
 *875
 
 foreign corporation may be considered as present within the State for the purpose of obtaining jurisdiction over it, such a determinaion does not necessarily carry the conclusion that the corporation is “ doing business ” within the State to the extent of requiring compliance with section 1312 of the Business Corporation Law (see
 
 International Text Book Co.
 
 v.
 
 Tone,
 
 220 N. Y. 313). Whether the local activities engaged in by an unauthorized corporation sufficiently make out the transaction of business within the meaning of the .statute, necessarily depends on the particular facts and circumstances of each case
 
 (Sterling Novelty Corp.
 
 v.
 
 Frank & Hirsch Distr. Co.,
 
 299 N. Y. 208, 210). In the case at bar, the most that can be said is that plaintiff maintained an agent corporation in New York, for the purpose of receiving orders for plaintiff’s books, which orders were transmitted to Paris for acceptance. It has been repeatedly held that this does not constitute the transaction of business within the State
 
 (Compania Mexicana
 
 v.
 
 Compania Metropolitana,
 
 250 N. Y. 203;
 
 Hamlin
 
 v.
 
 Barrett & Co.,
 
 246 N. Y. 554;
 
 Miller
 
 v.
 
 Surf Props.,
 
 4 N Y 2d 475, 480). The fact that the foreign corporation may have a listing in the local telephone directory
 
 (Harmony Music Center
 
 v.
 
 Railway Express Agency,
 
 35 Misc 2d 18) or its name on the door of its agent’s local office
 
 (Hamlin
 
 v.
 
 Barrett & Co., supra)
 
 does not alter the situation. As this court stated in
 
 Bonnell Co.
 
 v.
 
 Katz
 
 (23 Misc 2d 1028, 1031): “where a foreign corporation’s primary contact here is to solicit business or to merely facilitate the sale and delivery of its merchandise * * * then such a corporation should be exempt from any burdens which our laws place upon foreign corporations doing business here ”. For these reasons the plaintiff was not in violation of section 1312 of the Business Corporation Law and had the right to maintain the instant lawsuit in the courts of this State.
 

 The defendant is not entitled to credit for returned books except such credits as have been granted by the plaintiff. As to the books refused for return, defendant may obtain them if desired, and plaintiff will aid in facilitating the return.
 

 The discount controversy is dependent upon the contract between the parties. Plaintiff contends that no discount is due because of default in payment. Defendant contends discount is due in accordance with prior arrangements, and not as indicated in the letter of December 27, 1967, which reduced the discount percentage.
 

 There is no evidence that defendant protested or refused to do business under the changed discount arrangements. In fact business was carried on during 1968. Further, defendants’
 
 *876
 
 testimony on the discount claimed was an approximation based on the earlier arrangements. There was no testimony by defendant on the December, 1967, arrangement. On the other hand plaintiff computed the discount on that arrangement as 4,903.92 francs. This figure, under the circumstances, must be accepted. There is no justification for refusing to credit this amount to defendant. There is no contractual or factual basis for such a penalty.
 

 Implicit in the defendants’ general denial, is objection to certain items in plaintiff’s invoice. These objections were reviewed by the court, after the testimony concerning these items. There are only two .sets of items that should be deleted for which defendant is entitled to credit. These are charges for interest because the account was in default, and for telegrams sent to defendant demanding payment. These charges total 8,845 francs and 65 francs respectively. Plaintiff claims that these charges were made in accordance with custom and usage in the trade. Defendant denies knowledge of any such custom or any agreement to pay interest or any other late charges. These charges are improper and defendant is entitled to credit (25 C. J. S., Customs and Usages, § 2;
 
 Gerseta Corp.
 
 v.
 
 Silk Assn. of America,
 
 220 App. Div. 293).
 

 The plaintiff’s claim amounts to 243,346 francs. The credits to which defendant is entitled amount to 13,814 francs. Therefore the balance found due is 229,532 francs. However, this court must express such award in terms of United States Dollars
 
 (Frontera Transp. Co.
 
 v.
 
 Abaunza,
 
 271 F. 199). In view of the devaluation of the French franc on August 8, 1969, the court must now determine what rate of exchange to apply in converting the amount of the judgment from francs to dollars.
 

 Plaintiff urges that the rate in effect on the date of default in payment should be applied. Defendant claims that the rate in effect on the date of judgment controls. The difference in this case is substantial.
 

 Over the years, the Federal cases have not been in agreement on this question (cf.
 
 Deutsche Bank
 
 v.
 
 Humphrey,
 
 272 U. S. 517 with
 
 Hicks
 
 v.
 
 Guinness,
 
 269 U. S. 71 and
 
 International Silk Guild
 
 v.
 
 Rogers,
 
 262 F. 2d 219). In
 
 Shaw, Savill, Albion & Co.
 
 v.
 
 The Fredericksburg
 
 (189 F. 2d 952) the court adopted the judgment-day rule. That case was essentially a tort case involving a question of general maritime law. The court (p. 956) took note of the fact that the New York courts have adopted the breach-day rule, but said that ‘ ‘ the judgment-day rule yields a just result in this case.” In the New York State courts, a few cases have adopted the judgment-day rule (see
 
 *877
 

 Metcalf Co.
 
 v.
 
 Mayer,
 
 213 App. Div. 607 and
 
 Sirie
 
 v.
 
 Godfrey,
 
 196 App. Div. 529). There should be no rigid rule of thumb, and the judgment-day rule should be rejected when it will work an injustice (Rifkind, Money as a Device for Measuring Value, 26 Col. L. Rev. 559). In addition it would appear that the weight of authority in New York is that the breach-day rule should apply. 1 ‘ In actions properly before the courts of the state of New York to recover damages for breach of contract, where the plaintiff is primarily entitled to recover a sum expressed in foreign money, or the contract is to pay foreign money in a foreign country, * * * the measure of damages is the equivalent of such
 
 money
 
 in terms of dollars, at the rate of exchange prevailing at the date of breach of the contract, or as of the date when the obligation is payable, or matures.” (13 N. Y. Jur., Damages, § 53.)
 

 This rule has been adopted by the Court of Appeals
 
 (Hoppe
 
 v.
 
 Russo-Asiatic Bank,
 
 235 N. Y. 37; also, see,
 
 Richard
 
 v.
 
 American Union Bank,
 
 241 N. Y. 163), and mentioned with approval recently by the Appellate Division, First Department in
 
 Brill
 
 v.
 
 Chase Manhattan Bank
 
 (14 A D 2d 852).
 

 In this case, the equities favor application of the ‘ ‘ breach-day rule.” If it were not applied, the defendant would be rewarded for defaulting in his obligation to pay for the merchandise. The breach-day rule should be applied in this case.
 

 No judgment may be had against the individual defendant. The plaintiff is entitled to judgment against the defendant corporation. Plaintiff’s expert testified that at the time of breach the French franc was quoted as 4.9750 to the dollar. The plaintiff may enter judgment for $46,136, with interest from January 1,1969, as demanded.