**William D. CONNOR, Appellant**
**(Plaintiff below),**

v.

**Jere W. BOGRETT, George R. Cassel,**
**and Coons Kennels, a co-partnership,**
**Appellees (Defendants below).**

No. 5023.

Supreme Court of Wyoming.

June 22, 1979.

John T. Pappas of Vidakovich, Pappas & Hooper, P. C., Lander, for appellant.

James L. Hettinger of Hettinger & Leedy, Riverton, for appellees.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

THOMAS, Justice.

The substantive legal issue found in this case is the question of the manner of application of the sales provisions of the Uniform Commercial Code as adopted in Wyoming (§§ 34–21–201 through 34–21–299.5, W.S.1977) to a sale of a registered Black Labrador retriever which was intended for competition in field trials. More specifically the question is whether the continued physical ability of this retriever, as a matter of law, was precluded from becoming part of the basis for the bargain of the parties in

the context of § 34–21–230, W.S.1977. There is presented, in addition, a procedural question arising out of the appellees' contention that the appeal should be dismissed because the notice of appeal was not filed in time. We shall hold that we have jurisdiction because the notice of appeal was timely and that the sales provisions of the Uniform Commercial Code lead to an affirmance of the summary judgment for the sales price which was entered by the district court upon the counterclaim of the seller.

The appellant, Connor, was the purchaser of the registered Black Labrador retriever. The appellees, Bogrett, Cassel and Coons Kennels, a co-partnership, composed of Bogrett and Cassel, were the sellers of the retriever. (These parties hereafter will be identified as Bogrett, who was the principal actor in connection with the sale by the appellees, or as sellers.) Connor was an aficionado of Black Labrador retrievers, and he was knowledgeable about such animals. He competed with his dogs in field trial competitions, and had owned one national champion. He also judged field trial competitions. It was in this way that he became acquainted with Bogrett.

By virtue of this acquaintanceship he was invited to go dog hunting with a party which included Bogrett in 1972, and it was on this occasion that he first saw the retriever which is the subject matter of this action. Connor later judged this retriever in a field trial which was held in Idaho, and in the spring of 1974 he was present at a field trial in Colorado in which the dog competed. At that time there was dialogue with Bogrett about the possible sale of the dog to Connor, and a suggested price of $14,000 was mentioned.

Prior to that time Bogrett had been informed by his veterinarian that the retriever was afflicted with hip dysplasia. By deposition Connor's veterinarian testified that his definition of hip dysplasia "would be that the fit of the coccyxsfemoral joint is not correct in the sense that the femoral head does not fit deeply enough into the acetabulum of the hip." He then testified that the result of the abnormal fit is exces-

sive motion of the joint which gives rise to changes in that joint which generally result in arthritis. Connor denies that he was given this information by Bogrett, but that point is not material because Connor asked to have the retriever examined by his own veterinarian prior to his final decision as to the purchase. As a result of that examination Connor was advised by his veterinarian that the retriever was afflicted with hip dysplasia and that the usual long-range result of this condition was the development of osteoarthritis which could occur to the extent of disabling the dog. The recommendation of the veterinarian was that Connor should not purchase the dog.

After receiving this information Connor and Bogrett had further discussions with respect to this retriever. The discussions included comparison of the dog to another Black Labrador retriever which also had hip dysplasia but still had performed successfully in field trials and had become a national champion. Bogrett stated that this retriever had similar qualities, and Connor and Bogrett did discuss the potential of the dog in terms of field trial competition. Certainly the success of the retriever as a field trial competitor would depend upon his physical ability to compete.

Ultimately Bogrett agreed to sell and Connor agreed to buy this Black Labrador retriever. The parties agreed upon a total purchase price of $8,000, of which $6,000 was to be paid at the time of the sale and the balance of $2,000 was to be paid by May 30, 1975. On July 24, 1974, Connor paid the $6,000, and the dog was delivered to him at Riverton, Wyoming. The American Kennel Club registration papers for this retriever never were transferred to Connor. Connor, however, took the dog, gave it additional training, and entered it in field trials as his dog. On one occasion he even offered the services of the dog for breeding purposes. It does appear that in at least one instance he shot the dog with a shotgun, which apparently is a recognized training technique for retrievers for field trial competition.

Later in the year some difficulties were encountered with respect to the willingness

of the dog to perform in field trial competition. A trainer whom Connor had working with the dog suggested the possibility of a physical problem. Connor then had the retriever re-examined by his veterinarian, and the X rays taken on this occasion, as distinguished from the earlier X rays, revealed definite evidence of osteoarthritis. The veterinarian recommended to Connor that he return the dog to the seller. Connor then went back to Riverton, and he requested a rescission of the sale contract. This occurred in January of 1975. Bogrett, on behalf of the sellers, refused to agree to the rescission. There was a somewhat angry exchange between Connor and Bogrett, and Connor then released the dog in Bogrett's yard in Riverton and left.

This action was brought by Connor seeking rescission of the contract. In a counterclaim filed with the Answer the sellers sought to recover the $2,000 balance of the purchase price, and in a second claim for relief requested judgment for the reasonable value of services furnished in caring for, maintaining and training the retriever after January 25, 1975. It was not until later in the pleading stage that the parties injected theories under the Uniform Commercial Code, but both did take this stance with respect to pretrial memoranda which were filed with the court and in their respective motions for summary judgment. The district court granted the motion of the sellers for summary judgment on the claim for the balance of the purchase price; denied Connor's motion for summary judgment in which he sought the return of the $6,000 previously paid; and left for trial the question of the damages claimed by the sellers for services in connection with the mainte-nance, care and training of the retriever. The record discloses that the district court held that Connor had accepted the dog, and that he had no right to revoke his acceptance. The court then concluded that the result was that the sellers were entitled to recover the full purchase price. The judgment which was entered by the court provided, in accordance with Rule 56, W.R.C.P., that there was no just reason for delaying entry of the judgment upon the claims adjudicated. The date of entry of that judgment was March 9, 1978. Thereafter, on April 26, 1978, the parties stipulated to the dismissal of the second count of the counterclaim without prejudice, and although no order was entered upon that stipulation a notice of appeal then was filed on May 25, 1978. In seeking the dismissal of this appeal it is urged by the sellers that the judgment was final when entered; that the filing of the notice of appeal for that reason was not timely; and that the appeal should be dismissed under prior authorities from this court.

With respect to the substantive legal issue, Connor claims that the continued physical ability of this retriever to compete in field trial competition was a condition of the agreement resulting in an express warranty in accordance with the provisions of § 34–21–230, W.S.1977.[1] Connor therefore urges that the court erred in refusing to grant his motion for summary judgment because of the breach of this warranty. Alternatively Connor contends that the motion for summary judgment by the sellers should have been denied because there was a genuine issue of material fact as to whether the physical condition and continu-

---

1.    34-21-230:

"(a) Express warranties by the seller are created as follows:

"(i) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise;

"(ii) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description;

"(iii) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

"(b) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

ing ability of the dog were to be considered a part of the basis of the bargain for the dog. The sellers rely upon other provisions of the Uniform Commercial Code, contending that there was no express warranty under § 34–21–230, W.S.1977, and that the language of the statute relating to an affirmation of the value of the goods or a statement purporting to be the seller's opinion or commendation does not create a warranty. In their brief the appellees discuss the exclusion of any implied warranty which might arise under the Uniform Commercial Code, but we need not review that proposition since the appellant does not rely upon any implied warranty.

■ The right of the seller to recover the balance of the purchase price is readily traceable through the provisions of the Uniform Commercial Code. We agree with the trial court that Connor accepted this dog within the context of § 34–21–269, W.S. 1977.[2] There is no real question that Connor did act in ways inconsistent with the ownership by Bogrett. He certainly treated the dog as his own in every respect, including, particularly, using his own training methods, entering the dog in field trial competitions, and offering its services for breeding purposes. Cf. *Park County Implement Co. v. Craig,* Wyo., 397 P.2d 800 (1964).

Section 34–21–270(a), W.S.1977, states unequivocally: .

"(a) The buyer must pay at the contract rate for any goods accepted."

With respect to remedies of the seller, it is provided in § 34–21–288:

"(a) Where the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section [§ 34–21–289], the price:

"(i) Of goods accepted   *   *   *."

We note at this point that the items set forth in the second claim of the sellers' counterclaim fall within the incidental damages described in § 34–21–289, W.S.1977.[3] For the sake of completeness, we add that under the circumstances of this case the seller, even though in possession of the dog, would have no duty to resell under the provisions of § 34–21–288(b), W.S.1977, although he would have to account for the proceeds if a sale were effected.

The essence then of Connor's position, as indicated previously, is that he was entitled to return this retriever when he received the information that the dog was afflicted with osteoarthritis because of his claim that Bogrett made an express warranty of the continued physical ability of the retriever for purposes of field trial competition. Such a warranty, if it existed, would be one relating to the future condition of the retriever, or as the matter is described in connection with mechanical items it would be a warranty of future performance. If such a warranty existed Connor is correct in his position that discovery of the breach of such a warranty must await the failure to successfully perform in the future, and appropriate remedies for the breach may be claimed at that time.

■ We agree with the district court in this instance that, as a matter of law, the expressions of Bogrett relative to the po-

**2.** *34–21–269:*

"(a) Acceptance of goods occurs when the buyer:

"(i) After a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or

"(ii) Fails to make an effective rejection (subsection (1) of section 2–602 [§ 34–21–265(a)]), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

"(iii) Does any act inconsistent with the seller's ownership; but if, such act is wrongful as

against the seller it is an acceptance only if ratified by him.

"(b) Acceptance of a part of any commercial unit is acceptance of that entire unit."

**3.** *34–21–289:*

"Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach."

tential of this retriever were only expressions of opinion or commendation within the provisions of § 34–21–230(b), W.S.1977. *Sessa v. Riegle,* 427 F.Supp. 760 (E.D.Pa. 1977), affd. 568 F.2d 770 (3d Cir. 1977). Furthermore it appears in the record that Connor was not relying upon these comments of Bogrett, and for that reason they would not serve as a basis of the bargain. In *Wege v. Harris,* Tex.Civ.App., 420 S.W.2d 255 (1967), the Texas court upheld a summary judgment concluding as a matter of law that an express warranty relative to the age of cows had not been created. Since animals "are fragile creatures, susceptible to myriad maladies, detectable and undetectable" (*Sessa v. Riegle,* supra, p. 766), for a seller to warrant the future physical condition of a dog such as this, particularly when the buyer has examined it and been apprised of the potential of a disease which developed, requires a very precise contract. Here, since neither the buyer nor the seller could assume to have the power to actually control those events, the possibility of such a condition appropriately is described as a gamble, with the risk of such eventualities being assigned to the buyer.

■ There is additional reason to hold that there was no express warranty here as a matter of law. While there is no issue here with respect to the statute of limitations, § 34–21–299.5(b), W.S.1977, provides as follows:

"(b) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, *except that where a warranty explicitly extends to future performance of the goods* and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." (Emphasis added.)

For purposes of this statute then an express warranty of future performance of the goods must be explicit, and it follows logically that all warranties of future performance of goods should be explicit. Even if the statute of limitations is not involved, this requirement unquestionably simplifies the disposition of the issues involving claims for the breach of such warranties. In treating with this provision the Mississippi court stated that explicit means something express or clearly stated and is more than merely implied. *Rutland v. Swift Chemical Co.,* Miss., 351 So.2d 324 (1977). The Illinois court in considering Chapter 26, § 2–401(2), Ill.Rev.Stat.1967 (the parallel provision of the Wyoming Statutes is § 34–21–246(a)(ii)) stated that the term "explicit" means that which is so clearly stated or distinctly set forth that there is no doubt as to its meaning. *Harney v. Spellman,* 113 Ill.App.2d 463, 251 N.E.2d 265 (1969). In *Beckmire v. Ristokraft Clay Products Company,* 36 Ill. App.3d 411, 343 N.E.2d 530 (1976), the same concepts were applied by the Illinois court to the statute of limitations definition. In whatever manner the deposition statements of Connor and Bogrett are examined in this case nothing is said relative to the future ability or physical condition of this retriever which could in any way be considered "explicit."

■■ We earlier noted that the damages claimed in the second claim of the sellers' counterclaim should be considered to be incidental damages in accordance with § 34–21–289, W.S.1977. The retriever was returned to Bogrett in connection with an attempt by Connor to invoke remedies under the Uniform Commercial Code which we hold were not available to him. Nevertheless, the retriever at that time did come into Bogrett's control as an incident of the sale, and Connor's return of the retriever in part manifested his anticipatory breach of the contract (see § 34–21–273, W.S.1977). Bogrett sought to recover the price of the goods based upon this breach of the contract by Connor, and the statute (§ 34–21–288, W.S.1977) by its language includes incidental damages in his cause of action. That being so, the judgment was not a final judgment when entered even though it contained the appropriate language under Rule 56, W.R.C.P. This conclusion clearly follows from the opinion of this court in *Wheatland Irrigation District v. McGuire,*

Wyo., 537 P.2d 1128 (1975). Consequently the judgment was not final until the stipulation to dismiss the second claim of the counterclaim was filed, and the notice of appeal which was filed within 30 days of the filing of that stipulation was timely so as to vest this court with jurisdiction over the appeal.

The judgment of the district court is affirmed.

ROONEY, Justice, specially concurring, with whom McCLINTOCK, Justice, joins.

I reach the same result as does the majority of the court by finding that the appeal is out of time and should be dismissed for that reason.

This action concerned three distinct and separate claims:

1.  A claim for relief in the complaint, founded on cancellation or rescission of a contract, with a prayer for return of the $6,000 paid as part of the consideration for the dog.
2.  A claim in the counterclaim for specific performance of the same contract, with a prayer for payment of the $2,000 balance of the consideration for the dog.
3.  A claim in the counterclaim for services rendered in caring for an abandoned dog belonging to plaintiff, with a prayer for payment at the rate of $175.00 per month.

On March 9, 1978, summary judgment was entered for defendants-appellees on the first two of these claims and denied as to the third one. A stipulation for dismissal of this third one, without prejudice, was filed on April 26, 1978. Both parties moved for summary judgment, alleging no genuine issue as to a material fact. In the summary judgment, the court made an express determination that "there is no just reason for delaying entry of the Judgment *upon the claims* herein adjudicated." (Emphasis supplied).

If the time for filing the notice of appeal began to run at the time of entry of the judgment on March 9, 1978, the notice was not timely filed on May 25, 1978, more than 30 days later. I believe such to be the case.

If the summary judgment was not a final judgment, as found by the majority of the court, the appeal was timely. The majority opinion in this respect is premised on the proposition that "the damages claimed in the second claim of sellers' counterclaim should be considered to be incidental damages in accordance with § 34–21–289, W.S. 1977," and it is made in reliance on the holding in *Wheatland Irrigation District v. McGuire,* Wyo., 537 P.2d 1128 (1975), to the effect that a summary judgment on the issue of liability, leaving the issue of damages to be determined, is not a final judgment. I believe the majority opinion is in error in this respect, in both its premise and in its reliance.

Although the majority opinion attempts to rationalize to the contrary, the damages requested in this third claim for services rendered to an abandoned dog are not the type of damages contemplated by § 34–21–289.[1] The official note to that section of the Uniform Commercial Code reads in part:

"Purposes: To authorize reimbursement of the seller for expenses reasonably incurred by him *as a result of the buyer's breach* * * *." (Emphasis supplied.) 1A U.L.A.–U.C.C., § 2–710, p. 402.

The third claim is not based on the buyer's breach. The basic contract was executed as far as the sellers were concerned. The dog was delivered and accepted and used by the buyer.[2] The only unexecuted

---

1.  Section 34–21–289, W.S.1977, reads:

    "Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods *after the buyer's breach,* in connection with return or resale of the goods or otherwise *resulting from the breach.*" (Emphasis supplied.)

2.  Although not relevant if the appeal is out of time, I concur with the majority opinion in its determination relative to the substantive issue of acceptance, of lack of rejection and of lack

part of the contract was payment of the remaining $2,000 by the buyer. This is the breach for which incidental damages can be claimed pursuant to § 34–21–289. Recovery for services rendered to the dog on behalf of the owner must be based on another theory. Defendants-appellees characterize themselves as "involuntary bailees" of an "abandoned" dog. They obviously recognize the difficulty in showing an obligation or duty on the part of the dog's owner to pay for taking the dog off the street and caring for it. In any event, such damages are beyond the scope of the contract and are not the type of damages contemplated by § 34–21–289. They are in a category other than are expenses incurred by failure to honor f. o. b., for expenses incurred in repossessing goods or reselling them, etc. *Librairie Hachette, S. A. v. Paris Book Center, Inc.*, 62 Misc.2d 873, 309 N.Y.S.2d 701 (1970); *Hudgens v. Bain Equipment & Tube Sales, Inc.*, Tex., 459 S.W.2d 873 (1970); *Proctor & Gamble Distributing Company v. Lawrence American Field Warehousing Corp.*, 16 N.Y.2d 344, 266 N.Y.S.2d 785, 213 N.E.2d 873 (1965).

In *Wheatland Irrigation District v. McGuire*, supra, 537 P.2d at 1130, the court pointed out that "the claim involved was not a *multiple* claim as required by the rule [54(a), W.R.C.P.], but rather the pleadings presented a *single* claim \* \* \*." (Emphasis *not* supplied.) As previously indi-

cated, this case does present multiple claims. The issues of damages *and* the issue of liability were both decided with reference to the claim for cancellation or rescission of the contract and with reference to the claim for specific performance of it. This is not the situation referred to in Rule 56(c), W.R.C.P.[3], which would make the summary judgment an interlocutory one. It is the situation referred to in Rule 54(b), W.R.C.P.[4] which makes the summary judgment a final order as defined in Rule 72(a), W.R.C.P.[5] The summary judgment on the claim for rescission or cancellation of the contract and on the claim for specific performance did affect substantial rights and did determine the action relative thereto and did prevent a judgment for plaintiff both on his complaint and on the first counterclaim. The determination of damages on these two claims was not waiting a trial. The situation was not that upon which the court ruled in *Wheatland Irrigation District v. McGuire*, supra. The majority opinion creates precedent which will seriously blunt the purpose and use of Rule 54(b), W.R.C.P.

I would dismiss the appeal as untimely.

---

of revocation by plaintiff under §§ 34–21–265, 34–21–269 and 34–21–271, W.S.1977.

**3.** Rule 56(c), W.R.C.P. reads in part:
"\* \* \* A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

**4.** Rule 54(b), W.R.C.P. reads in part:
"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved,

the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. \* \* \*"

**5.** Rule 72(a), W.R.C.P. reads in part:
"A final order is: (1) an order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment; \* \* \*."