[Civ. No. 50860. First Dist., Div. Four. May 28, 1981.]

MEDITERRANEAN EXPORTS, INC., Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY,
Respondent;
HARVARD INVESTMENT COMPANY, Real Party in Interest.

606

608

Counsel

Frederick E. Kearns for Petitioner.

No appearance for Respondent.

Pillsbury, Madison & Sutro, Harlan M. Richter, Michael H. Salinsky and Sarah G. Flanagan for Real Party in Interest.

OPINION

RATTIGAN, J.—Petitioner Mediterranean Exports, Inc., a Florida corporation (Mediterranean), is the defendant in an action pending in respondent court. Real party in interest Harvard Investment Company, a California corporation (Harvard Investment), is the plaintiff. Mediterranean filed an answer and a cross-complaint in the action. Harvard Investment moved for an order striking both pleadings on the grounds that Mediterranean lacked capacity to defend the action, and to sue on its cross-complaint, because (1) it was a foreign corporation transacting intrastate business in California and had not qualified to do so, and (2) it had failed to pay corporate franchise taxes owed to the State of California. Respondent court granted the motion. Mediterranean now seeks a writ of mandate commanding the court to set aside its order granting the motion and to "reinstate" the answer and cross-complaint. As will appear, other matters are pending on an appeal taken by Mediterranean from the same order.

PROCEDURAL SEQUENCE

*The Action and the Motion*

Harvard Investment commenced the action by filing a "Complaint For Breach of Lease" in respondent court. In a single cause of action stated in the complaint, Harvard Investment alleges that it is a California corporation; that Mediterranean is a Florida corporation transacting business in California; and that Harvard Investment is entitled to recover damages for Mediterranean's alleged breach of a written lease executed by the parties in 1978. A copy of the lease is attached to the complaint as an exhibit. It shows that Harvard Investment thereby leased to Mediterranean an office suite in a building located at 875 Mahler Road, in Burlingame, for a term of three years. Harvard Investment also alleged in its complaint that it was entitled to recover attorneys' fees in the action pursuant to paragraph 21 of the lease.[1]

---

[1]This paragraph provides: "21. ATTORNEY'S FEES. If either party shall bring any action for relief against the other, declaratory or otherwise, arising out of this lease, in-

Mediterranean filed an answer to the complaint and a cross-complaint in which it stated one or more causes of action for damages against Harvard Investment and two other named cross-defendants. Harvard Investment noticed a motion for an order striking both pleadings on the grounds mentioned above.[2]

Extensive declarations and other documents were initially filed on the motion by both parties. At a hearing on it, respondent court ordered the parties to file additional documents and that the motion would thereupon stand submitted. After additional documents had been filed, the court made an order (in the form of a memorandum decision) reading as follows: "The Court finds that Defendant and Cross-Complainant, Mediterranean ... was doing business intrastate in California and failed to comply with the appropriate provisions of the Corporation [*sic*] and Revenue and Taxation Codes.

"Plaintiff's [Harvard Investment's] motion is granted and the Court orders the Answer and Cross-Complaint of Mediterranean ... stricken."

### Mediterranean's Appeal and the Present Proceeding

Mediterranean filed a timely notice of appeal from the order striking its pleadings. The ensuing appeal is No. 1 Civil 50520 in this court. Harvard Investment moved to dismiss the appeal on the grounds that the order is nonappealable and that an appealable judgment has not been entered in the action. Mediterranean subsequently filed an "Application For Leave To Produce Additional Evidence" and an "Application For Findings of Fact" on the appeal, and commenced the present pro-

---

cluding any suit by Lessor [Harvard Investment] for the recovery of rent or possession of the premises, the losing party shall pay the successful party for attorney's fees, discovery costs and court costs which shall be deemed to have accrued on the commencement of such action and shall be paid whether or not such action is prosecuted to judgment."

[2]The grounds were stated in the notice of motion as follows: "This motion is made under sections 435 and 453 of the Code of Civil Procedure, section 2203 of the Corporations Code and section 23301 of the Revenue and Taxation Code on the following grounds: (1) that Mediterranean lacks capacity to sue or defend in any action in any court of the State of California because its failure to pay the corporate franchise tax has worked a forfeiture of its corporate powers, rights and privileges; and (2) that Mediterranean lacks capacity to maintain any action upon any intrastate business in any court of the State of California because Mediterranean has never obtained from the Secretary of State a certificate of qualification."

ceeding by petitioning this court for a writ of mandate. We issued an alternative writ of mandate, to which Harvard Investment has filed a return as real party in interest. The matters pending on Mediterranean's related appeal (1 Civ. 50520) have been held in abeyance pending the disposition of its petition in this proceeding.

## THE EVIDENCE RECEIVED ON THE MOTION TO STRIKE

The documents initially filed by Harvard Investment in support of its motion included a "Certificate Of Nonfiling—Corporation" in which the Secretary of State certified that there was no record in her office that Mediterranean had filed documents required "in order to qualify a foreign corporation to transact intrastate business in this State" pursuant to "the Corporations Code . . .";[3] and a letter written by the Franchise Tax Board to Harvard Investment's attorneys, stating that the board had "no current information" on Mediterranean and was "unable to identify any corporation" using that name "as being currently registered in or paying franchise or income taxes to the State of California as a corporate entity."

The supporting documents initially filed by Harvard Investment also included declarations or affidavits showing that a telephone was listed in Mediterranean's name at 875 Mahler Road in Burlingame; that Mediterranean was "registered" with the Employment Development Department "as an employer in California"; and that it "has reported California employees on its payroll."

Opposition documents filed by Mediterranean before the hearing included an affidavit by Stephen Musolino, the president of Mediterranean; a declaration by Milton C. Standifer; and an affidavit by Frederick E. Kearns, Mediterranean's attorney. Musolino stated in his affidavit as follows: "That Mediterranean . . . has never transacted business in the State of California. That independent contractors have solicited orders for ceramic tile on behalf of Mediterranean . . . from September, 1978, through the present and all such orders require acceptance by me at the home office in Miami, Florida, before becoming binding contracts. That said ceramic tile is shipped directly from the manufacturer in Italy to the purchaser in the State of California. That ·

---

[3]Corporations Code section 2105, subdivision (a), provides in pertinent part: "A foreign corporation shall not transact intrastate business without having first obtained from the Secretary of State a certificate of qualification. . . ."

all payments by the purchaser are made either directly to the manufacturer in Italy or to Mediterranean ... in Miami, Florida. That the office suite leased from Harvard Investment Company was leased by me for the convenience of the independent contractors in lieu of reimbursing them for their expenses therefor."

Standifer stated in his declaration that he was an "independent contractor residing in the State of California, and soliciting orders for ceramic tile in California ... on behalf of Mediterranean ... of Miami, Florida"; that orders taken by him are transmitted to Miami for approval by Mediterranean; that he has "no authority to enter into binding contracts on behalf of Mediterranean ...," that he makes "no collections" for Mediterranean, and that he works on a commission basis only; and that "the office space at 875 Mahler Road, Burlingame, ... was provided and a clerical position was filled by Mediterranean ... in lieu of reimbursing" him for his "expenses."

Attorney Kearns alleged in his affidavit that the office of the Secretary of State had "advised" him by telephone that Mediterranean "was not required to file pursuant to Section 2105 of the Corporations Code since ... [its] ... business activities were, in their [sic] opinion, solely interstate in nature"; and that the Franchise Tax Board had "advised" him by telephone that Mediterranean "was not required to pay franchise tax to the State of California" for the same reason.

At the hearing on the motion, respondent court stated that Attorney Kearns' "hearsay declaration doesn't help me very much, and I was hoping maybe you could get a certificate or letter or something from the Secretary of State saying you don't have to qualify." Mr. Kearns replied that the office of the Secretary of State does not issue "that thing"; that "they do issue ... a notice, what's called a certificate of forfeiture," if a corporation's rights have been forfeited; and that "they haven't issued such a thing" and "[i]n fact, they have no record of it." After further discussion, the court stated that it would "need additional declarations" and ordered them filed as described above.

The additional documents subsequently filed by Mediterranean included further declarations by Musolino and Standifer describing the nature and details of the business it transacted in California. The documents also included another declaration by Attorney Kearns in which he authenticated and presented copies of letters exchanged between him

and personnel of the Franchise Tax Board after the first hearing on the motion.[4]

In further support of the motion, Harvard Investment filed a declaration showing in effect that Mediterranean had maintained a checking account at a Burlingame bank, in its (Mediterranean's) name but from an address in Miami, Florida; and a declaration authenticating and quoting deposition testimony in which an employee of Mediterranean had described the leased premises in Burlingame and the activities conducted there.

## REVIEW

### *Respondent Court Erred in Striking the Answer and the Cross-complaint*

As previously indicated, Corporations Code section 2105 provides that a foreign corporation shall not "transact intrastate business" in California "without having first obtained from the Secretary of State a certificate of qualification." (See fn. 3, *ante.*) Section 2105 appears in chapter 21 (Foreign Corporations, commencing with § 2100) of division 1 (General Corporation Law) of title 1 (Corporations) of the Corporations Code. Section 191 of that code defines the term "transact intrastate business" for purposes of chapter 21.[5] Corporations Code section 2203, subdivision (c), provides that "[a] foreign corporation subject to

---

[4]We refrain from quoting the Franchise Tax Board's letter in full because of its length. It fairly describes Mediterranean and its business activities in California as shown to respondent court by it (Mediterranean) in opposition to the motion (and as described to the Franchise Tax Board personnel by Attorney Kearns). The letter concludes with these passages, which we quote because of their materiality to the present proceeding: "Solely on the basis of the facts stated above, it is our conclusion that Mediterranean is not doing intrastate business in California and is not subject to the bank and corporation franchise tax. It is, however, deriving income from sources in California and is subject to the corporation income tax unless its activities are immune from taxation pursuant to the provisions of Public Law 86-272. [¶] The activities of Mediterranean go beyond the scope permitted by Public Law 86-272.... [¶] Therefore, a tax is due under the Corporation Income Tax Law. Our records indicate that Mediterranean has not filed returns. Arrangements should be made to file returns and pay any tax due. [¶] However, in the case of a foreign corporation engaged solely in interstate commerce, as is the situation with Mediterranean, there are no provisions in the law for the suspension of corporate powers for nonpayment of its corporation income tax. Therefore, Mediterranean has all the corporate powers which it would have if the tax were paid in full."

[5]Corporations Code section 191 provides in pertinent part as follows: "191. (a) For the purposes of Chapter 21 (commencing with Section 2100), 'transact intrastate busi-

the provisions of Chapter 21 ... which transacts intrastate business without complying with Section 2105 shall not *maintain* any action ... upon any intrastate business so transacted in any court of this state, commenced prior to compliance with Section 2105" (italics added), until it has complied, paid a specified penalty, and filed proof of compliance (and of its currency in payment of franchise and other taxes owed in this state) in the court where the action is pending.

The Corporations Code thus prohibits the *maintenance* of an action by a foreign corporation which is in violation of section 2105. That code does not include a provision that the corporation may not *defend* an action brought against it, but Revenue and Taxation Code section 23301 provides in pertinent part that "the corporate powers, rights and privileges of a domestic taxpayer[] may be suspended," and that "the exercise of the corporate powers, rights and privileges of a foreign taxpayer in this state may be forfeited," if "any tax, penalty or interest ... due and payable" is not paid within a specified time after the taxpayer's return is filed (*id.*, subd. (a)) or after "notice and demand from the Franchise Tax Board ...." (*Id.*, subd. (b).) (1) It has been held that a domestic or foreign corporation whose powers have been suspended or forfeited pursuant to Revenue and Taxation Code section 23301 may not *defend* an action against it, and even that it may not appeal from an "adverse decision." (*Boyle* v. *Lakeview Creamery Co.* (1937) 9 Cal.2d 16, 19-20 [68 P.2d 968] [domestic corporation suspended pursuant to

---

ness' means entering into repeated and successive transactions of its [*sic*] business in this state, other than interstate or foreign commerce.

"(b) .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(c) Without excluding other activities which may not constitute transacting intrastate business, a foreign corporation shall not be considered to be transacting intrastate business within the meaning of subdivision (a) solely by reason of carrying on in this state any one or more of the following activities:

"(1) Maintaining or defending any action or suit or any administrative or arbitration proceeding, or effecting the settlement thereof or the settlement of claims or disputes.

"(2) Holding meetings of its board or shareholders or carrying on other activities concerning its internal affairs.

"(3) Maintaining bank accounts.

"(4) Maintaining offices or agencies for the transfer, exchange and registration of its securities or depositaries with relation to its securities.

"(5) Effecting sales through independent contractors.

"(6) Soliciting or procuring orders, whether by mail or through employees or agents or otherwise, where such orders require acceptance without this state before becoming binding contracts.

"(7) Creating evidences of debt or mortgages, liens or security interests on real or personal property.

"(8) Conducting an isolated transaction completed within a period of 180 days and not in the course of a number of repeated transactions of like nature...."

predecessor statute]; *Alhambra-Shumway Mines, Inc.* v. *Alhambra Gold Mine Corp.* (1957) 155 Cal.App.2d 46, 50 [317 P.2d 649] [Nevada corporation under forfeiture pursuant to the present statute].)[6]

■ The suspension or forfeiture contemplated by Revenue and Taxation Code section 23302 is *mandatory* because the word "shall" is used,[7] but the statute is not self-executing. The suspension or forfeiture takes effect only when the Franchise Tax Board transmits the name of the tax-delinquent corporation to the Secretary of State. (Rev. & Tax. Code, § 23302.)[8] The suspension or forfeiture is also subject to "revivor" upon application by the corporation to the Franchise Tax Board and payment of all delinquent and current taxes. (*Id.*, §§ 23305, 23305a.)

■ Harvard Investment's motion to strike, as such, was made pursuant to sections 435 and 453 of the Code of Civil Procedure. (See fn. 2, *ante.*) Those sections respectively authorize a motion to strike a cross-complaint and an order striking "[s]ham and irrelevant answers."[9] The extensive evidentiary showing on the motion to strike Mediterranean's cross-complaint made it a "speaking" motion to strike, which is *not* authorized by Code of Civil Procedure section 435 and which accordingly must be treated and tested by this court as if it were a motion for summary judgment. (*Vesely* v. *Sager* (1971) 5 Cal.3d 153, 167-168 [95 Cal.Rptr. 623, 486 P.2d 151]; cf. *Deyo* v. *Kilbourne* (1978) 84 Cal. App.3d 771, 779, fn. 2 [149 Cal.Rptr. 499].)

---

[6]In *Alhambra-Shumway Mines*, the Court of Appeal also held that a motion to strike the pleadings of the foreign corporation under forfeiture should have been granted. (*Alhambra-Shumway Mines, Inc.* v. *Alhambra Gold Mine Corp., supra*, 155 Cal. App.2d 46 at pp. 50-51.) However, the fact of forfeiture was shown in a certificate by the Secretary of State filed in support of the motion. (*Id.*, at p. 48.)

[7]Revenue and Taxation Code sections 5 and 16 respectively provide: "5. Unless the context otherwise requires, the general provisions hereinafter set forth govern the construction of this code.

"16. 'Shall' is mandatory and 'may' is permissive."

[8]Revenue and Taxation Code section 23302 provides in pertinent part: "The Franchise Tax Board shall transmit the names of taxpayers to the Secretary of State as to which the suspension or forfeiture provisions of Section 23301 ... are or become applicable, and the suspension or forfeiture therein provided for shall thereupon become effective and the certificate of the Secretary of State shall be prima facie evidence of such suspension or forfeiture."

[9]Code of Civil Procedure section 435 provides in pertinent part: "435. (a) As used in this section, 'complaint' includes a cross-complaint. [¶] (b) Any party, within the time he is allowed to answer a complaint, either at the time he demurs to the complaint, or

According to the summary judgment test, the motion to strike the cross-complaint should have been granted only if the affidavits filed in support of the motion were sufficient to sustain a judgment in favor of Harvard Investment and the affidavits filed in opposition were insufficient to raise a triable issue of fact. (*Vesely v. Sager, supra,* 5 Cal. 3d 153 at pp. 169-170; *Fosgate v. Gonzales* (1980) 107 Cal.App.3d 951, 954 [166 Cal.Rptr. 233].) Application of this test demonstrates that Harvard Investment's showing on the motion was clearly insufficient to establish as a matter of law that Mediterranean was transacting intrastate business in California.

" . . . [B]y excluding acts done by a foreign corporation in this state in interstate or foreign commerce from its definition of the words 'transact intrastate business,' [the Legislature] clearly recognized that a corporation may do business in this state without transacting intrastate business." (*Carl F. W. Borgward, G.M.B.H.* v. *Superior Court* (1958) 51 Cal.2d 72, 76 [330 P.2d 789] [interpreting former § 6203 of the Corp. Code, the predecessor of present § 191 (quoted in fn. 5, *ante*)]; cf. *Detsch & Co.* v. *Calbar, Inc.* (1964) 228 Cal.App.2d 556, 569 [39 Cal.Rptr. 626]; *Thorner v. Selective Cam Transmission Co.* (1960) 180 Cal.App.2d 89, 91 [4 Cal.Rptr. 409].)

Harvard Investment showed on its motion that Mediterranean had conducted certain business activities in this state, including the maintenance of a bank account, an office, and an employee payroll. Mediterranean showed in opposition that its activities consisted of the solicitation of orders for ceramic tile by salesmen who were independent contractors; that the orders placed in California required acceptance by Mediterranean in Florida before they became binding contracts; and that the office and its staff were maintained for use by the soliciting salesmen.

Corporations Code section 2105, subdivision (a), provides that a foreign corporation must obtain a certificate of qualification before it may "transact intrastate business" in California. (See fn. 3, *ante*.) The term "transact intrastate business" is defined for this purpose in Corporations Code section 191, subdivision (a), as "entering into repeated and

---

without demurring, may serve and file a notice of motion to strike the whole or any part of the complaint. . . ."

Code of Civil Procedure section 453 provides in full as follows: "Sham and irrelevant answers, and irrelevant and redundant matter inserted in a pleading, may be stricken out, upon such terms as the court may, in its discretion, impose."

successive transactions of ... business in this state, other than inter-state or foreign commerce," but the same statute expressly excludes from the definition such activities as the maintenance of a bank account; the effectuation of sales "through independent contractors"; and the solicitation of orders which require acceptance outside of California before they may become "binding contracts." (Corp. Code, § 191, subds. (c)(3), (c)(5), (c)(6) [quoted in fn. 5, *ante*].)

It has been held in other jurisdictions that the maintenance of an office by a foreign corporation in a given state, for the convenience of salesmen who solicit orders subject to acceptance elsewhere, does not amount to "intrastate business" which will require the corporation to qualify in the state. (See, e.g., *House of Stainless* v. *Marshall & Ilsley Bank* (1977) 75 Wis.2d 264 [249 N.W.2d 561, 563-564]; *Librairie Hachette, S.A.* v. *Paris Book Center, Inc.* (1970) 62 Misc.2d 873 [309 N.Y.S.2d 701, 703]; *Alfred M. Best Co.* v. *Goldstein* (1938) 124 Conn. 597 [1 A.2d 140, 143]; *Federal Schools* v. *Sidden* (1936) 14 N.J.Misc. 892 [188 A. 446, 447-448]; see also *United Merchants & Mfrs., Inc.* v. *David & Dash, Inc.* (D.Md. 1977) 439 F.Supp. 1078, 1089; *Stafford-Higgins Industries* v. *Gaytone Fabrics, Inc.* (S.D.N.Y. 1969) 300 F. Supp. 65, 67.)

In sum, it was shown on Harvard Investment's motion to strike the cross-complaint that there is at least a triable issue of fact as to whether Mediterranean's activities in this State amounted to the transaction of "intrastate business" which required it to obtain a certificate of qualification. The existence of that issue means that the order granting the motion fails the requisite test to be applied pursuant to the summary judgment law. (*Vesely* v. *Sager, supra*, 5 Cal.3d 153 at pp. 167-170.)

This is even more clearly true of the order striking Mediterranean's cross-complaint, *and* its answer, on the ground that it was without capacity to sue or defend because it had forfeited the corporate powers, rights, and privileges of a foreign corporation, pursuant to Revenue and Taxation Code section 23301, by reason of its failure to pay franchise taxes to the State of California. The forfeiture prescribed by Revenue and Taxation Code section 23301 is not automatic, and it will take effect ("become effective") only when the Franchise Tax Board transmits the name of the tax-delinquent foreign corporation to the Secretary of State. (Rev. & Tax. Code, § 23302 [quoted in fn. 8, *ante*].) The showing made on the motion included uncontradicted evidence sup-

porting the inference that this had•not been done in Mediterranean's case. (See e.g., the letter quoted in fn. 4; compare *Alhambra-Shumway Mines, Inc.* v. *Alhambra Gold Mine Corp., supra*, 155 Cal.App.2d 46, at pp. 48, 50-51 [forfeiture certified by the Secretary of State; see fn. 6].) The order striking Mediterranean's pleadings is wholly erroneous to the extent that it was made pursuant to Revenue and Taxation Code section 23301.

### Mandate Is the Proper Remedy

■ Harvard Investment contends that the petition for a writ of mandate should be denied on the ground that Mediterranean has an adequate remedy at law by way of an appeal from the final judgment to be entered in the action. We first observe that this contention is utterly inconsistent with Harvard Investment's own theory that Mediterranean is under a forfeiture of its corporate powers (for nonpayment of franchise taxes), which would operate to deny it the right to take an appeal at all. (*Boyle* v. *Lakeview Creamery Co., supra*, 9 Cal.2d 16, at pp. 19-20; see *Alhambra-Shumway Mines, Inc.* v. *Alhambra Gold Mine Corp., supra*, 155 Cal.App.2d 46, at p. 50.)

In any event, the "final judgment" from which Mediterranean might appeal would necessarily be a *default* judgment because respondent court's order has stricken its answer in the action. The erroneous order thus deprives Mediterranean of the right to *defend* the action, as well as the right to sue on its cross-complaint. Although extraordinary relief is "rarely" granted at the pleading stage of an action, "mandamus will lie when it appears that the trial court has *deprived a party of an opportunity to plead his cause of action or defense*, and when extraordinary relief may prevent a needless and expensive trial and reversal. [Citations.]". (*Taylor* v. *Superior Court* (1979) 24 Cal.3d 890, 894 [157 Cal.Rptr. 693, 598 P.2d 854] [italics added].) This situation is obviously presented here. A writ of mandate will issue as prayed.

### Attorneys' Fees

■ Mediterranean contends in effect that this court should make an award of attorneys' fees to it in the present proceeding. The principal ground of this contention is alleged misconduct on the part of Harvard Investment, in having made a "frivolous motion" and engaging in "improper procedure," for which Mediterranean seeks the award pursuant

to this court's general supervisory power to impose sanctions for misconduct by attorneys. Mediterranean also cites and relies on the provision for attorneys' fees in the lease on which Harvard Investment's action is based. (See fn. 1, *ante* [quoting par. 21 of the lease].)

Harvard Investment's motion to strike Mediterranean's pleadings cannot be characterized as "frivolous." The "improper procedure" cited by Mediterranean involves extensions of time granted by that court and "settlement negotiations" allegedly having been "frustrated by ... [Harvard Investment's] ... uncompromising demand for the full amount of the balance of rent to become due under the lease." Such matters do not warrant the imposition of an award of attorneys' fees as a sanction pursuant to this court's supervisory powers. (Cf. *Bauguess* v. *Paine* (1978) 22 Cal.3d 626, 637-639 [150 Cal.Rptr. 461, 586 P.2d 942].)

The writ of mandate ordered below will operate as a remand of the cause to respondent court. That court may properly consider exercising its discretion on a request by Mediterranean for an award of attorneys' fees, pursuant to paragraph 21 of the lease, in connection with services rendered by its attorneys in this extraordinary proceeding. (See *Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 483, 485 [119 Cal. Rptr. 215, 531 P.2d 783]; *Mandel* v. *Hodges* (1976) 54 Cal.App.3d 596, 624 [127 Cal.Rptr. 244, 90 A.L.R.3d 728].)

### The Related Appeal

An order consistent with our disposition herein is being made in 1 Civil 50520, which is now moot.

A writ of mandate will issue directing respondent court to vacate its order striking the answer and the cross-complaint filed by Mediterranean Exports, Inc., in action No. 239063; to order said pleadings reinstated; and to conduct further proceedings in said action consistent with this opinion.

Caldecott, P. J., and Christian, J., concurred.